CITIES SERVICE COMPANY,

a corporation of the State of Delaware,

*vs.*

JESSE C. McDOWELL, CAROLINE H. McDOWELL, HORACE H. McDOWELL and DOROTHY M. CHILD.

*New Castle, Jan.* 18, 1922.

Bill against agent seeking to follow funds alleged to have been wrongfully converted must allege that the securities sought to be recovered as having been bought with complainant's converted funds were in fact purchased with such funds.

Where a bill by a corporation, after alleging that defendant, while acting as complainant's agent, employee and confidential adviser, received and converted to his own use large sums of money which he invested in securities in which the corporation sought to establish a trust, further alleged that he was a director of the company without charging any breach of trust based on his occupancy of the office of director, such allegation was open to objection on demurrer that it was too vague.

Allegations in a bill that defendant acted as "agent, subagent, employee, or confindential adviser" for complainant, and, while so acting, received and converted to his own use "commissions or personal profits," were not subject to the objection that they were vague, indefinite and uncertain, but were merely allegations in the alternative, which are permissible.

In a corporation's suit against an agent, in which it was alleged that while acting as agent defendant converted to his own use funds of the corporation and invested them in stocks and other securities which the corporation sought to have decreed to be its property, the bill was not demurrable for failure to

allege which particular funds were employed in the purchase of particular stocks; such information being in the nature of evidence.

In a bill by a corporation against a former agent alleging that, while acting as such, he received commissions or personal profits which he converted to his own use, an allegation that he committed such alleged frauds in connection with the acquisition of certain enumerated properties "among others" was open to the objection on demurrer that it was too vague and indefinite to reasonably inform defendants as to what they were expected to meet.

Where a corporation's agent converted its funds to his own use and invested them in stocks or other securities, the corporation was not entitled to an equitable lien on other shares of stock acquired by defendant before he acted in such fiduciary capacity and before the alleged wrongs and conversion took place on the theory that, where one has misapplied money or unlawfully enriched himself at the expense of others, his entire estate will be charged with an equitable lien to the amount of the money unlawfully converted.

In a suit by a corporation against its former nonresident agent and others to establish its title to stocks purchased by the agent with funds of the corporation converted to his own use, where the corporation has no lien on, and does not seek to impress any trust on, stock purchased by the agent before he became such, and such stock is ostensibly owned by nonresident third persons, though the corporation alleges it to belong to the agent, it is not entitled to a temporary injunction restraining such third persons from transferring it pending the suit, in order that, if the corporation obtains a decree, it may have at hand property out of which the decree may be made good, as this would be employing the injunction to accomplish the same purpose as a writ of foreign attachment.

DEMURRER TO BILL AND MOTION TO MODIFY RESTRAINING ORDER. The bill is filed by Cities Service Company against Jesse C. McDowell, Caroline H. McDowell, Horace H. McDowell and Dorothy M. Child. All the defendants are nonresidents. It complains that the defendant, Jesse C. McDowell, was employed by the complainant in a confidential and fiduciary capacity in connection with the purchase and acquisition by the complainant of certain valuable properties; that while being so engaged, the said Jesse C. McDowell accepted, received and converted to his own use large sums of money, stocks and securities as commissions or personal profits out of said transactions which said sums of money did and do now rightfully belong to the complainant; that during much of the period covered by said transactions, said Jesse C. McDowell was a director of complainant company; and that with funds so wrongfully ac-

quired and converted to his own use, the said Jesse C. McDowell purchased certain shares of stock of complainant company and also a certain right or credit known as a Cities Service Debenture Series C in the amount of five thousand dollars. The bill charges that Jesse C. McDowell has transferred certain shares of stock of complainant company to his son, Horace H. McDowell, one of the defendants, without consideration, for the purpose of avoiding taxation and placing his assets beyond the reach of complainant's just claims, and that he, Jesse C. McDowell, is the owner thereof, as complainant is informed and believes, and therefore alleges; that he transferred certain other shares to his wife, Caroline H. McDowell, another of said defendants, but is himself, as complainant believes and alleges, the owner thereof; and that he transferred certain other shares and the said debenture to Dorothy M. Child, another one of the defendants, who occupies certain confidential relations with the said Jesse C. McDowell, and that as to these shares the complainant believes, and therefore alleges, that they are the property of the said Jesse C. McDowell.

The bill further charges that a portion of said shares was acquired by Jesse C. McDowell with funds obtained by the said Jesse C. McDowell in breach of his trust while acting as confidential agent for the complainant and in the fiduciary capacity above described. The solicitor for the complainant contends that the bill also charges that the five thousand dollars debenture was likewise purchased with converted funds. Whether the bill does so charge is one of the questions raised by the demurrer.

The prayers are that all the shares of stock above referred to, and also the five thousand dollars debenture, in the hands of Horace H. McDowell, Caroline H. McDowell and Dorothy M. Child, respectively, be decreed to be the property of the complainant; that Jesse C. McDowell be decreed to account for all moneys, etc., wrongfully received by him while acting for the complainant in said fiduciary capacity; and that a preliminary, and thereafter a permanent, injunction issue restraining all the defendants from assigning, transferring, etc., any of the stocks above mentioned, or the debenture.

Upon filing the bill, the complainant obtained a restraining

order in the language of the prayer for injunction, effective pending a hearing on the rule for a preliminary injunction.

The defendants demurred to the bill setting forth special grounds of demurrer. Upon the argument of the demurrer, complainant made certain admissions with respect to certain blocks of the stock in question, and the defendants thereupon moved to modify the restraining order to the extent of relieving from its operation those shares concerning which the admission had been made.

*George N. Davis* and *Robert Penington*, for the complainant.

*Caleb S. Layton*, and *James H. Hughes, Jr.*, of the firm of Marvel, Marvel, Layton and Hughes, for the defendants.

THE CHANCELLOR. I shall first dispose of the questions raised by the demurrer, and then dispose of the motion to modify the restraining order.

### DEMURRER.

1. The first objection to be considered under the demurrer has to do with the securities in the hands of the defendants, Horace H. McDowell, Caroline H. McDowell and Dorothy M. Child. With respect to a portion of these securities, the bill avers that they were wrongfully acquired by Jesse C. McDowell with the funds of complainant obtained by him in breach of his trust as confidential agent, and it seeks to follow them in the hands of the present holders and impress upon them a trust in favor of complainant, who claims to be the rightful and equitable owner of the same. With respect to securities so situated, I do not understand the defendants to raise any question by their demurrer.

A question is made, however, as to just how many of said securities are in this category; that is, there is some question as to just how many of the securities are tainted by the allegations of the bill with fraud. This requires that I pass upon the sufficiency of the allegations which are referred to as being adequate, as a matter of pleading, to fix upon various of the securities the taint of fraud.

It is contended that the five thousand dollars debenture, alleged to be in the name of Dorothy M. Child is not charged by the bill to have been acquired by Jesse C. McDowell with funds

belonging to the complainant and wrongfully converted to his own use by McDowell. The complainant insists that the bill does sufficiently. charge that said debenture was so acquired. I am of the opinion that the complainant is in error in this contention. The allegation in paragraph five of the bill which charges the employment by Jesse C. McDowell of the converted funds of the complainant in the making of purchases relates solely to the purchase of shares of stock mentioned in the paragraph; and though the complainant insists that it was likewise intended to relate to the purchase of the five thousand dollars debenture, yet I am clearly of the opinion that it does not so relate. The objection made in this connection is, therefore, well taken.

It is objected that while paragraph three of the bill alleges that Horace H. McDowell is the holder of five hundred and fifty shares of stock which, it is charged, belong in fact to Jesse C. McDowell, yet there is no allegation that these shares were all acquired by Jesse C. McDowell with funds that belong to the complainant. As to two hundred of the shares standing in the name of Horace H. McDowell, the bill charges that they were acquired by Jesse C. McDowell with the converted funds of the complainant, and as to this number, the demurrants make no question. But they object as to the balance of the block, viz. three hundred and fifty shares, that the bill is defective in that so far as appears from its allegations these shares may have been acquired by Jesse C. McDowell with his own funds and in an entirely proper manner, and that such being the case no complaint is properly made by the bill. I do not find anywhere in the bill any allegations which justify the view that the complainant has any interest whatever, legal or equitable, in the three hundred and fifty shares standing in the name of Horace H. McDowell. I therefore consider the demurrer well taken as to these three hundred and fifty shares.

For similar reasons, I consider the demurrer well taken as to all but twenty shares referred to in paragraph four of the bill as standing in the name of Caroline H. McDowell. The allegations in this paragraph are so made that the defendants cannot, with reasonable certainty, know to just what number of shares the vice of fraud is intended to be imputed. It is clear that it is so intended as to the twenty shares mentioned; but as to the balance of the

shares in that paragraph mentioned, the defendants are left to speculation and uncertain inference for their guidance.

I think that the objection made to the allegations in the fifth paragraph of the bill concerning the shares standing in the name of Dorothy M. Child is well taken as to all but the blocks of two hundred and eighty-eight and one hundred and twenty-five shares. My reasons for this conclusion are similar to those stated in connection with the paragraphs dealing with Horace H. and Caroline H. McDowell.

With respect to the various blocks of stock held by Horace H. McDowell, Caroline H. McDowell and Dorothy M. Child, which, as I have just indicated, are not connected by sufficient allegations with the wrongdoing charged by the complainant to have been engaged in against it by Jesse C. McDowell, the complainant contends that, though the bill does not by its allegations assume to taint the shares referred to with the alleged frauds of Jesse C. McDowell, yet the allegation that these shares of stock are in fact the property of Jesse C. McDowell, though standing in the name of the three other defendants, is sufficient to keep them before the court in the pending litigation. This contention will be discussed when the motion to modify the restraining order is considered.

2. It is further objected by the defendants that the bill in various particulars is too vague and indefinite in its allegations; so that the rule requiring certainty in pleadings is offended against. Under this objection, the points as I have noted them are as follows:

(a) Paragraph six alleges that Jesse C. McDowell acted in a fiduciary capacity for the complainant, in that he was complainant's "agent, subagent or employee and confidential adviser," and that, while so acting, he secretly, unlawfully and fraudulently, without the knowledge or consent of the complainant, accepted, received and converted to his own use large sums of money, etc., and in the last clause of the paragraph it is also alleged that for a period of time said McDowell was a duly qualified director of the complainant company. I understand the defendants to contend that inasmuch as agent, subagent, employee and confidential adviser, and director are expressive of different relationships, the defendants are left in the dark as to just which of the

fiduciary relationships mentioned the complainant relies upon to make out the case set up by the bill.

It should be observed that paragraph six does not seem to base any breach of trust on the relationship which McDowell maintained as director of the complainant company. If it be intended to charge any breach of trust based on the occupancy of the office of director, the bill ought to say so. Otherwise, I can see no point in alleging the relationship. The allegation, therefore, that McDowell was a director, if it is meant to make anything of it, is not coupled with any charge of violation of trust as such director; and if it is not meant to be of any particular use as a support for proof, it is meaningless. At all events, I think the defendants are entitled to object that this allegation that McDowell was a director is too vague. They are entitled to know with a fair degree of certainty whether the complainant intends to make anything out of the fact of the directorship. In this particular, the demurrer is well taken.

As to the other charge of vagueness, indefiniteness and uncertainty in connection with the allegation that McDowell acted as "agent, subagent, employee, or confidential adviser," the fact that these words are expressive of different ideas (if such be the fact) does not expose the bill to attack. Assume that three different ideas are expressed, what is the result? Is it not simply this: That the complainant advises the defendant to be prepared for proof of all three of the things expressed? This is not tantamount to vagueness or uncertainty as the terms are understood in pleading. If the case were a case at law, the pleader would be permitted to base his case on all three of the relationships. While he would be allowed to do so in one declaration, yet a separate count would be necessary for each relationship. In equity pleading we have no such things as counts, as are found at law, and for the pleader to accomplish in equity the purpose that counts serve at law, he is required to state his case in the alternative in one paper, known as the bill.

The allegation now under consideration is described by the demurrants as vague, indefinite and uncertain. A more correct description, however, would be that it is in the alternative. If this be the correct view, as I think it is, then there can be no valid

objection to the manner of the allegation, for the draftsman of the bill "may aver two sets of facts of a different nature, when either set if true would support the relief asked and the relief asked is one and the same upon either set of facts." 1 *Whitehouse, Equity Practice, par.* 101, and cases cited. If the complainant can establish any one of the relationships enumerated, the relief would be the same. I hold the demurrer is not well taken in the particular here dealt with.

It is further objected that the allegation that Jesse C. McDowell breached his trust by taking "commissions or personal profits" is likewise vague, indefinite and uncertain. This allegation is in the alternative and the considerations just mentioned are applicable to it. The demurrer is not well taken in this particular.

Another objection raised by the demurrer is that the bill which charges the acquisition by Jesse C. McDowell of certain stocks with the funds of the complainant does not inform the defendants what particular funds were employed to purchase particular stocks. I hold against this objection. Such information is in the nature of evidence and need not be set out in the bill.

Paragraph seven of the bill charges that the said McDowell committed his alleged frauds in connection with the acquisition of certain properties which are enumerated, and the properties so enumerated are alleged to be "among others." The defendants contend that the expression "among others" is too vague and indefinite to reasonably inform them as to what they are expected to meet. This objection is well taken. If the language were permitted to stand, the complainant would be free to roam over a wide field of proof and might take the defendants with unwarranted surprise. The complainant should inform the defendants fully and exactly of what particular transactions it intends to rely on as being the ones in connection with which the alleged frauds were committed.

I believe I have passed upon all the objections raised by the demurrer, and for the reasons hereinbefore stated and on the grounds indicated, the demurrer is sustained.

MOTION TO MODIFY RESTRAINING ORDER.

Should the restraining order now outstanding be modified?

At the argument on the demurrer the complainant made certain admissions with respect to some of the shares of stock mentioned in the bill. Thereupon the present motion for a modification of the restraining order was made. The admission has since been slightly restricted by the complainant. The motion will be disposed of in the light of the admission as it now stands.

This admission is that, as to three hundred and fifty shares of the preferred stock of Cities Service Company in the name of Horace H. McDowell and one hundred and nine shares of the preferred and two shares of the common stock in the name of Caroline H. McDowell, the complainant does not seek to impress upon them a trust. It is conceded by the complainant that these shares were acquired by Jesse C. McDowell before he acted in the fiduciary capacity for the complainant which the bill charges and before, therefore, the alleged wrongs and conversions took place. These shares could not have been purchased or acquired with complainant's funds, or in fraud of its rights, and it is, therefore, asked that they be relieved from the operation of the restraining order which now forbids their transfer or assignment in the hands of their record owners.

Upon the making of the motion, I was strongly inclined to grant it immediately. The solicitor for the complainant wished to submit a brief and I, therefore, deferred making a decision.

The contention of the complainant as expressed by its solicitor is as follows:

"That where a person has misapplied money, or unlawfully enriched himself at the expense of others, his entire estate will be charged with an equitable lien to the amount of the money unlawfully converted, on the theory that the amount and value of his estate have been enhanced and augmented by the unlawful appropriation."

Two cases are cited in support of this proposition—*McColl v. Fraser*, 40 *Hun* (*N. Y.*) 111, and *In re Mumford*, 5 *N. Y. St. Rep.* 303. They are to the effect that an assignee for the benefit of creditors will, in administering assets, be required to pay in full a creditor whose claim is founded on a breach of trust by the assignor, even though the trust funds had been converted by the

assignor to his own use before the assignment. This ruling is based on the theory that the entire estate passing to the assignee is charged with an equitable lien in behalf of the beneficiary and is received by the assignee burdened with such lien. Another case, *Draper v. Stone*, 71 *Me.* 175, is also cited. This case, resting on the same principle, rules that, when plaintiff had delivered shares of stock to defendant's intestate in trust for plaintiff, the defendant, as administrator of the trustee who had died insolvent, was required to deliver to the plaintiff the number of shares so transferred in trust, out of shares remaining in the decedent's estate, even though some of the precise shares so transferred in trust had been disposed of by decedent during his lifetime.

Conceding to these cases all that they seem to hold, I am unable to see anything in them that bears on the question before me. For here it is admitted that the shares now being considered were acquired by Jesse C. McDowell before he ever assumed that fiduciary relationship toward the complainant upon which the equity of the bill rests. To the extent of these shares, therefore, the estate of Jesse C. McDowell was in no wise augmented by the conversion of the complainant's assets, and no breach of trust attended their acquisition. This circumstance alone, not to mention others, is, in itself, enough to distinguish the instant case from those cited by the complainant.

The complainant concedes that under the present allegations of the bill no trust is sought to be impressed upon the three hundred and fifty shares of preferred stock standing in the name of Horace H. McDowell and one hundred and nine shares of preferred and two shares of common stock standing in the name of Caroline H. McDowell. These shares may, therefore, be termed innocent shares. Yet their present holders are now restrained from transferring them. Upon what principle? As just observed, it cannot be on the theory upon which the New York cases and the Maine case, cited above, proceed. I know of no possible theory upon which the court is justified in holding them where they are, pending this litgation, except upon the theory that a court of equity may employ its injunctive process for the purpose of holding assets in no wise involved in the pending controversy to the end of the litigation in order that, in case the complainant finally

obtains a decree, he may have readily at hand some property out of which he conceives the decree may be made good. But even so, in this particular case, difficult questions lurk in the fact that the shares are in the hands of third persons. These questions, however, I pass over as unnecessary for me to consider.

After all, though the complainant disclaims his contention to be such, the real question presented is this, viz.: May the writ of injunction be employed in equity to accomplish the same purpose which is served by the writ of foreign attachment at law? Here the main defendant is a nonresident; he is charged with a breach of trust; property in the names of others, but alleged on information and belief to be his, is found in this state; this property is in no wise involved in the suit; and it is sought by a preliminary injunction to arrest it in the hands of its present holders to await the final decree, and then in some way to compel it to respond to the complainant in case the decree is in its favor. In its last analysis, is not this (eliminating for the moment the material circumstance that title to the shares is in persons other than the principal defendant) an employing of the injunction writ in equity as a foreign attachment is employed at law? The writ cannot be so employed. No authority can be found which allows it.

Injunctive relief may be granted on various grounds. In a general way, it may be said that two classes of cases call for its application: First, where, for instance, irreparable injury is threatened, or some forbidden act is about to be done by corporate or municipal officers, in cases of which kind the preventive aid of equity is the ultimate relief sought; and second, where the injunction is sought not as the ultimate and only relief, but in aid of some primary equity which the bill sets up.

This case clearly does not fall in the first class; and as to the so-called innocent shares of stock, the case clearly does not fall in the second class, for with respect to these the bill sets up no equity whatever. No lien is charged against them and no fraud is imputed to them. They are in no wise related to the controversy. They can be of no possible concern in this suit until the stage thereof is reached where a decree is made. At that time, if the decree should be for the complainant, these so-called innocent shares might in some way be sought in satisfaction of the decree. As-

suming that this could be done, then the injunction in equity would be used similarly to and as broadly as the mesne process of attachment at law. At least in substance it would be so. The writ of injunction cannot be used in this manner. Its issuance must be predicated on the existence of some equity. The anticipatory desire to aid the enforcement of a possible future decree, standing alone, has never been recognized as constituting such an equity.

The restraining order ought to be dissolved insofar as the innocent shares of stock are concerned, and it will, therefore, be so modified so as to relieve from its operation the three hundred and fifty shares of preferred stock standing in the name of Horace H. McDowell, and the one hundred and nine shares of preferred stock and two shares of common stock standing in the name of Caroline M. McDowell.

An order will be prepared in accordance with the views herein expressed.