## De BEERS CONSOLIDATED MINES, LTD. et al. v. UNITED STATES.

NO. 1189.

Argued May 2, 1945.—Decided May 21, 1945.

214

*Mr. Wm. Dwight Whitney,* with whom *Mr. Robert T. Swaine* was on the brief, for petitioners in No. 1189. *Mr. John M. Harlan,* with whom *Mr. John E. F. Wood* was on the brief, for petitioners in No. 1190.

*Mr. Herbert A. Berman,* with whom *Assistant Solicitor General Cox, Assistant Attorney General Berge* and *Mr. Edward S. Stimson* were on the brief, for the United States.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

These cases come before the court on petitions for certiorari presented pursuant to § 262 of the Judicial Code.[1] Each petition is by several of the defendants in a single suit pending in the District Court.

Two matters are presented: the propriety of review of the action below by certiorari, and the alleged excess of jurisdiction by the court below in making the order of which the petitioners complain. An understanding of the issues requires a statement of the nature of the suit and of the order made.

The United States filed a complaint in the District Court against the three petitioners in No. 1189, which are corporations organized under the laws of South Africa; the petitioners in No. 1190, which are respectively corporations organized under the laws of the Belgian Congo and under the laws of Portugal; and four other corporations, one organized under the laws of Belgium, one under the laws of the Belgian Congo, and two under the laws of the United Kingdom of Great Britain and Northern

---

[1] 28 U. S. C. § 377.

Ireland, and seven individuals respectively characterized as stockholder, or stockholder and director, or stockholder and employee, or managing agent, or managing director of one or more of the corporations. The complaint sought equitable relief based upon a charge that the defendants were engaged in a conspiracy to restrain and monopolize the commerce of the United States with foreign nations in gem and industrial diamonds, in violation of §§ 1 and 2 of the Sherman Act [2] and § 73 of the Wilson Tariff Act.[3] The complaint alleged that all of the corporate defendants were doing business within the United States.

With the complaint the United States filed a motion for a preliminary injunction in which it prayed that all of the corporate defendants be restrained from withdrawing from the country any property located in the United States, and from selling, transferring or disposing of any property in the United States "until such time as this Court shall have determined the issues of this case and defendant corporations shall have complied with its orders." The reason given in support of the motion was:

"The injury to the United States of America from the withdrawal of said deposits, diamonds or other property would be irreparable because sequestration of said property is the only means of enforcing this Court's orders or decree against said foreign corporate defendants. The principal business of said defendants is carried on in foreign countries and they could quickly withdraw their assets from the United States and so prevent enforcement of any order or decree which this Court may render."

Amongst other supporting papers was an affidavit by counsel for the United States which stated that "the investigation which he has made shows the foreign corporate defendants named herein have endeavored to avoid sub-

---

[2] 26 Stat. 209 as amended 15 U. S. C. §§ 1, 2.
[3] 28 Stat. 570 as amended 15 U. S. C. § 8.

jecting themselves to the jurisdiction of the courts of the United States by making their sales abroad only and requiring customers to pay in advance for all purchases."

There was also a motion for a restraining order without notice. The requested restraining order was issued and served on a number of banks; one, a bank in which De Beers had, the same day, established a credit of $59,320; others in which Forestiere had credits of approximately $632,000. Bank credits of petitioner Diamantes affected aggregate approximately $47,000. Both the two last named petitioners had purchased machinery and supplies in the United States of an approximate value of $100,000, which were .covered by the injunction. Upon a showing that as the corporate defendants were foreign corporations and would be required to obtain information and affidavits in support of their contention that service of process in the suit had not been made upon them, and in support of other motions addressed to failure to state a cause of action under the statutes, time to plead or answer was extended; and the injunction was from time to time modified and continued. Counsel for the petitioners, appearing specially, moved for dissolution of the injunction. The case was heard on affidavits and oral argument, the application was denied, and the injunction was continued in force. Thereupon the petitioners applied to this court for certiorari under § 262. That section provides in part:

"The Supreme Court, the circuit courts of appeals, and the district courts shall have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law."

All the petitioners attack the order as in substance a sequestration of property beyond the power of the court and an abuse of discretion in the circumstances. The petitioners in No. 1189 also seek a reversal on the ground that the complaint does not state a claim cognizable by United States courts and that the affidavits filed by these peti-

tioners establish that the court below has no jurisdiction over the persons of the defendants. It is obvious from the record that these contentions are still open in the court below and that court has not yet passed upon them. In the view we take of the case it is unnecessary for us presently to consider them.

In *United States Alkali Export Assn.* v. *United States, ante,* p. 196, the court has discussed the propriety of review under § 262 in a suit brought under the Anti-Trust laws where there is a substantial question whether the District Court has jurisdiction of a suit which it has retained for trial on the merits. What is there said applies in this instance. If the preliminary injunction here granted, unless set aside, will stand throughout the course of the trial and for an indefinite period after its termination, and if the order was beyond the powers conferred upon the court, it is plain, under the decisions mentioned, that the petitions present an appropriate case for the exercise of our jurisdiction under § 262. As hereafter noted the order in question was not made to grant interlocutory relief such as could be afforded by any final injunction, but is one respecting a matter lying wholly outside the issues in the case; no decision of the suit on the merits can redress any injury done by the order; and therefore unless it can be reviewed under § 262 it can never be corrected if beyond the power of the court below.[4]  When Congress withholds interlocutory reviews, § 262 can, of course, not be availed of to correct a mere error in the exercise of conceded judicial power. But when a court has no judicial power to do what it purports to do—when its action is not mere error but usurpation of power—the situation falls precisely within the allowable use of § 262. We proceed, therefore, to inquire whether the District Court is empowered to enter the order under attack.

---

[4] See *In re Chetwood,* 165 U. S. 443, 462; *Maryland* v. *Soper,* 270 U. S. 9, 30.

Although the Government based its motion upon the theory that the entry of the requested injunction would amount to a sequestration of the defendants' assets, and so argued in the court below, it has abandoned that position, because Rule 70 of the Rules of Civil Procedure,[5] which permits the issue of a writ of attachment or sequestration against the property of a disobedient party to compel satisfaction of a judgment, is operative only after a judgment is entered.

The Government disclaims any benefit of Rule 64, which provides for an attachment at the commencement of, or during the course of, an action for the purpose of securing payment of any judgment ultimately obtained, under and in accordance with the law of the state in which the court sits or under any existing federal statute. It is admitted that there is no applicable federal statute and that, under the law of New York, an attachment may issue only in an action seeking a money judgment and will not issue in an equity suit such as the instant one.[6]

The court below deduced the power to grant the injunction from § 4 of the Sherman Act [7] and from § 262 of the Judicial Code, the section under which petitioners seek review in this court. The respondent seeks to sustain the injunction under the same statutory provisions.

Section 4 of the Sherman Act confers jurisdiction on District Courts "to prevent and restrain violations of this act." That jurisdiction, as we have held,[8] is to be exercised according to the general principles which govern

---

[5] 28 U. S. C. foll. § 723c.

[6] N. Y. Civil Practice Act § 902; 7 Carmody, New York Practice, § 309; *Thorington* v. *Merrick*, 101 N. Y. 5, 3 N. E. 794; *Brown* v. *Chaminade Velours*, 176 Misc. 238, 26 N. Y. S. 2d 1009; *Avery* v. *Avery*, 119 App. Div. 698, 104 N. Y. S. 290. Compare *Lazenby* v. *Codman*, 28 F. Supp. 949; *Shiel* v. *Patrick*, 59 F. 992.

[7] 15 U. S. C. § 4.

[8] *Appalachian Coals* v. *United States*, 288 U. S. 344, 377.

the granting of equitable relief. Since it confers no new or different power than those traditionally exercised by courts of equity, we are remitted to examination of the practice of such courts, unless § 262 has enlarged those powers. That section empowers District Courts to issue all writs not specifically provided for by statute which may be necessary for the exercise of their respective jurisdictions and agreeable to the usages and principles of law. It turns out, therefore, that we are again remitted to an inquiry as to what is the usage, and what are the principles of equity applicable in such a case.

Preliminary to a discussion of the course of decision in chancery it will be well to note exactly what is the substance of the injunction, since the name given to the process is not determinative. In truth the purpose and effect of the injunction is to provide security for performance of a future order which may be entered by the court. Its issue presupposes or assumes the following things: (1) that the court has obtained jurisdiction of the persons of the defendants; (2) that it may be found and adjudged that the United States has stated a cause of action in its complaint; (3) that a decree may be entered after trial on the merits enjoining and restraining the defendants from certain future conduct; (4) that the defendants may disobey the decree entered; (5) that a proceeding may be instituted for contempt and will result adversely to the defendants; (6) that a fine may be imposed; (7) that the defendants may neglect or refuse to pay the fine; (8) that an execution issued for the collection of the fine pursuant to 18 U. S. C. 569 may be ineffectual to seize property or money of the defendants in liquidation of the fine, unless the moneys and properties covered by the injunction are held to await the event.

Under the Sherman Act and the Wilson Tariff Act, the District Court has no jurisdiction in this suit to enter a money judgment. Its only power is to restrain the future

continuance of actions or conduct intended to monopolize or restrain commerce. It, of course, has the power, pending final action in this respect, to restrain action or conduct violative of the statute. A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally. The injunction in question is not of this character. It is not an injunction in the cause, and it deals with a matter lying wholly outside the issues in the suit. It deals with property which in no circumstances can be dealt with in any final injunction that may be entered. It is not a form of seizure of property used in offending against the statute, for the property is not such as might be seized under § 6 of the Sherman Act,[9] or under § 76 of the Wilson Act,[10] and the complaint and affidavits do not purport so to charge. This process is, and can only be, sustained as a method of providing security for compliance with other process which conceivably may be issued for satisfaction of a money judgment for contempt.

The parties agree that neither of them can find any decision or textbook authority for the requisition of such security on the footing of a complaint in equity. The respondent refers us to certain cases as analogous but, upon examination, they are all found to be cases in which an interlocutory injunction was granted with respect to a fund or property which would have been the subject of the provisions of any final decree in the cause,[11] or against action which would ultimately have been subject to injunction by final decree.[12] The Government also refers us to cases where federal courts have enjoined inter-

---

[9] 15 U. S. C. § 6.

[10] 15 U. S. C. § 11.

[11] *Deckert* v. *Independence Corp.*, 311 U. S. 282.

[12] *Looney* v. *Eastern Texas R. Co.*, 247 U. S. 214; *Ohio Oil Co.* v. *Conway*, 279 U. S. 813; *Virginian R. Co.* v. *System Federation*, 300 U. S. 515; *Gibbs* v. *Buck*, 307 U. S. 66.

ference with their jurisdiction.[13]   Thus it argues that a court of equity has inherent power to protect its jurisdiction.   The fallacy, in the application of the principle here, is that, if service of the defendants is properly obtained, and if the complaint states a cause of action, no one questions the jurisdiction of the District Court to enter an appropriate injunction against future conduct violative of the Anti-Trust Acts.   The injunction here granted cannot aid or protect this exercise of its powers, and is not intended to do so.

Federal and State courts appear consistently to have refused relief of the nature here sought.[14]   The Government nevertheless urges that equity should extend its jurisdiction for the purpose envisaged in the issue of the injunction and advances several reasons in support of its position.   It suggests that, by analogy to the practice of issuing writs *ne exeat*,[15] the court, if it would restrain, by such a writ, an individual defendant in a similar case, should restrain the removal of the property of a corporate defendant from the jurisdiction.   The analogy is not a helpful one, for the writ *ne exeat* would not be issued in a case of this sort where the defendant presently owes no debt to the complainant nor is under any fixed duty by

---

[13] This power has often been exercised in cases where a court of equity has first taken jurisdiction of a *res* and where some other court has thereafter essayed to deal with that *res*.  See, e. g. *Wabash R. Co.* v. *Adelbert College*, 208 U. S. 38, 45; *Palmer* v. *Texas*, 212 U. S. 118, 129, 130; *Princess Lida* v. *Thompson*, 305 U. S. 456, 467.

[14] *Martin* v. *Berry Sons' Co.*, 83 F. 2d 857; *Cities Service Co.* v. *McDowell*, 13 Del. Ch. 109, 116 A. 4; *Wahlgren* v. *Bausch & Lomb Optical Co.*, 77 F. 2d 121; *Campbell* v. *Ernest*, 64 Hun 188, 19 N. Y. S. 123; *Platt* v. *Elias*, 101 App. Div. 518, 91 N. Y. S. 1079; *Maine Products Co.* v. *Alexander*, 115 App. Div. 112, 100 N. Y. S. 711; *Golden* v. *Tauster*, 68 Misc. 459, 125 N. Y. S. 83; *Wright Co.* v. *Aero Corp.*, 128 N. Y. S. 726; *Broadfoot* v. *Miller*, 106 Misc. 455, 174 N. Y. S. 497; compare *Gordon* v. *Washington*, 295 U. S. 30, 37.

[15] See 28 U. S. C. § 376.

222

reason of the receipt of moneys to account to the complainant therefor.[16]

The Government urges that the supposed hardship imposed upon the defendants by the entry of the injunction is exaggerated; that, by giving a bond, the defendants could release their moneys and property. To this there are several sufficient answers. If the court is without jurisdiction to demand security under the circumstances presented, it is equally without authority to compel the proffer of a bond by the seizure of property. If the process be justified in the present posture of the case, there is nothing to prevent other and further seizures of property or money brought into the United States in connection with transactions unrelated to any supposed violation of the Anti-Trust laws. Moreover, the very indefiniteness of the obligation, the remoteness of any possible exoneration of the surety, and the citizenship of the defendants would, as common experience tells us, require the posting of collateral with any bondsman, which would, in effect, tie up assets of value equal to that of those frozen by the injunction.

To sustain the challenged order would create a precedent of sweeping effect. This suit, as we have said, is not to be distinguished from any other suit in equity. What applies to it applies to all such. Every suitor who resorts to chancery for any sort of relief by injunction may, on a mere statement of belief that the defendant can easily make away with or transport his money or goods, impose an injunction on him, indefinite in duration, disabling him to use so much of his funds or property as the court deems necessary for security or compliance with its possible decree. And, if so, it is difficult to see why a plaintiff in any action for a personal judgment in tort or contract may not, also, apply to the chancellor for a so-called injunction sequestrating his opponent's assets pending recovery and

---

[16] *Ginsberg & Sons* v. *Popkin*, 285 U. S. 204, 208.

satisfaction of a judgment in such a law action. No relief of this character has been thought justified in the long history of equity jurisprudence.

We are of opinion that the injunction issued in this case is not authorized either by statute or by the usages of equity and that the decree granting the injunction should be reversed.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK, MR. JUSTICE MURPHY and MR. JUSTICE RUTLEDGE concur, dissenting.

I think the writ should be dismissed. For I do not think this is a proper case in which to exercise our jurisdiction under § 262 of the Judicial Code, 28 U. S. C. § 377.

Our jurisdiction under § 262 has been fully reviewed by the Chief Justice in *U. S. Alkali Export Assn.* v. *United States, ante,* p. 196. I agree that the exercise of our extraordinary jurisdiction was appropriate in that case. For the question presented not only went to the jurisdiction of the District Court to entertain the suit. If the defendants in that suit were right in their contention, a trial on the merits would have frustrated the statutory scheme which Congress had designed for the control of anti-trust activities.

But there is no such extraordinary situation presented here. This is precisely the kind of decree which Congress by the Expediting Act of February 11, 1903, as amended 15 U. S. C. § 29, intended should not be brought here for review. With reference to the change made by that Act, Mr. Justice Brandeis speaking for the Court in *United States* v. *California Cooperative Canneries,* 279 U. S. 553, 558, said: "These provisions governing appeals in general were amended by the Expediting Act so that in suits in equity under the Anti-Trust Act 'in which the United States is complainant,' the appeal should be direct to this

Court from the final decree in the trial court. Thus, Congress limited the right of review to an appeal from the decree which disposed of all matters, see *Collins* v. *Miller,* 252 U. S. 364; and it precluded the possibility of an appeal to either court from an interlocutory decree."

To allow this appeal is to defeat that policy. Long ago in *Bank of Columbia* v. *Sweeney,* 1 Pet. 567, 569, Chief Justice Marshall stated that an allowance of an appeal from an interlocutory ruling where Congress permitted an appeal only from a final judgment would be a "plain evasion" of the Act of Congress. We made a like ruling only recently in *Roche* v. *Evaporated Milk Assn.,* 319 U. S. 21, 30, where we said: "Where the appeal statutes establish the conditions of appellate review, an appellate court cannot rightly exercise its discretion to issue a writ whose only effect would be to avoid those conditions and thwart the Congressional policy against piecemeal appeals in criminal cases."

The present case presents no issue which warrants a departure from that long settled practice. This case raises no question of grave public importance. It is by no means comparable to *Ex parte United States,* 287 U. S. 241, where the interlocutory decree was equivalent to a denial of the absolute right of the government to put the accused on trial. It is wholly unlike the cases cited in *U. S. Alkali Export Assn.* v. *United States, supra,* where writs were issued under § 262 to review interlocutory orders which foreclosed the adjudication of rights entrusted to the jurisdiction of a state tribunal or which deprived a party of his basic right of trial by jury. The public importance of the present question is not apparent. The actual hardship imposed upon the defendants is no more than the cost of procuring a bond. It has always been assumed that mere hardship or inconvenience alone was not sufficient to justify resort to the extraordinary course of review by way of § 262. *U. S. Alkali Export Assn.* v. *United*

*States, supra.* Is the inconvenience of private litigants to be the newly found ground for evading the Expediting Act?

The reason advanced for departing from the long standing practice is that "the order was beyond the powers conferred upon the court." By that test every interlocutory order which is wrong can be reviewed here under § 262. That is novel doctrine. That seems to be the test for the Court says that the order can now be reviewed because it involves "a matter lying wholly outside the issues in the case." In other words, we look to the merits and take the case under § 262 if it appears that the District Court exceeded its authority. But it always exceeds its authority when it abuses its discretion. Thus we must now entertain these appeals on interlocutory orders, though Congress said we should not, in order to determine whether the District Court kept within bounds. Certainly Congress knew that some interlocutory orders might be erroneous when it chose to make them non-reviewable. It did not draw the distinction now suggested between interlocutory orders which are an abuse of conceded judicial power and interlocutory orders which otherwise exceed judicial authority. Congress moreover knew that if immediate review of interlocutory orders could not be had, no decision on the merits might be able to "redress any injury done by the order." But that was the choice which it made. We should respect it.

The decision, if followed, will open the flood gates to review of interlocutory decrees. It circumvents the policy of Congress to restrict review in these cases to final judgments.