578

BARMAT, INC.

v.

UNITED STATES of America and
Internal Revenue Service.

Civ. No. 1:94–CV–360–ODE.

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 17, 1994.

Leon Pomerance, Garland, Samuel &
Loeb, Atlanta, GA, for plaintiff.

Patricia Rebecca Stout, Asst. U.S. Atty.,
Atlanta, GA and Michael N. Wilcover, U.S.
Dept. of Justice, Tax Div., Washington, DC,
for defendants.

## ORDER

ORINDA D. EVANS, District Judge.

This civil action is before the court on Plaintiff's motions for judgment for specific acts and declaratory judgment and for contempt and protection under Rule 70 and Defendants' motion to vacate agreed order. A hearing on Plaintiffs' Rule 70 motion was held on September 20, 1994. The court makes the following findings:

This action initially arose as a suit for wrongful levy under 26 U.S.C. § 7426. Plaintiffs, Barmat, Inc. ("Barmat") and Barbara Matthews,[1] individually, claim that agents of the Internal Revenue Service ("IRS") wrongfully seized their restaurant property, which was located at Papa Piroziki's Ltd., an Atlanta area restaurant in bankruptcy. The complaint states that Barbara Matthews had previously purchased Papa Piroziki's, Ltd.'s assets. The IRS agents acted pursuant to an order which authorized the seizure of property of Barmat "as nominee agent" of Papa Piroziki's Ltd. and did not mention Barbara Matthews. (Complaint, exh. B). Apparently, Barbara Matthews owns Barmat and Lee Matthews, her ex-husband, owns Papa Piroziki's, Ltd. (Consent order at 2–3).

Plaintiffs moved for a temporary restraining order ("TRO") and/or preliminary injunction to halt the seizure. After a hearing in which the government was represented by an Assistant U.S. Attorney and an IRS agent, the motion for TRO was denied. By consent, the motion for preliminary injunction was referred to a magistrate judge.

The parties then entered into two consent orders. In the first, the parties essentially agreed that Papa Piroziki's Ltd. would continue to operate until disposition of the motion for preliminary injunction. Counsel for both parties and the undersigned executed this document. The present relevance of this agreement is questionable because some time in the spring of 1994 an electrical fire completely destroyed Papa Piroziki's, Ltd.

The validity of the second consent order is at issue in this case. It is, at best, an inartfully worded document, drafted by counsel for both parties and several IRS representatives. It provides, in pertinent part, the following:

To release the seizure on Barmat, Inc., doing business as Papa Piroziki's, and to satisfy the tax liability of Papa Piroziki's, Ltd., Lee Matthews would:

1. Pay a sum of $20,000, in cash, no later than February 22, 1994, at the offices of defendant IRS;

2. Pay an additional $10,000, in cash, no later than thirty (30) days from the date of execution of this consent order. This combined $30,000 represents the value of the assets of Papa Piroziki's, Ltd.;

3. Payment of all outstanding 941 employee taxes of Barmat, Inc., which were due and owing for tax periods ending December 31, 1992, June 30, 1993, September 30, 1993, and December 31, 1993, no later than March 18, 1994. The parties agree that the amount owed was approximately $15,000, receipt of which the IRS acknowledges. The IRS shall provide an exact accounting to Barmat, Inc., of any outstanding balance within one week of the execution of this agreement and Barmat, Inc. agrees to pay any remaining outstanding amount within two weeks of receipt of the accounting. Any penalties associated with the outstanding 941 taxes which are the subject of this agreement shall be abated . . .

5. Once the tax liability of Papa Piroziki's, Ltd. has been satisfied, the 100% penalty assessed against Lee Matthews, individually, totalling $34,306.66, plus additions, incurred a [sic] as a responsible person for Papa Piroziki's, Ltd., will be abated.

6. Simultaneously with the execution and filing of this consent order, plaintiff will voluntarily dismiss with prejudice the instant wrongful levy action against the defendant.

---

1. Barbara Matthews subsequently filed an unopposed motion for voluntary dismissal which was granted.

To resolve the instant action as well as all collateral tax liabilities of Mr. Matthews, the parties further agreed Mr. Matthews would:

7. File an offer-in-compromise on Lee Matthews' individual tax liability, for consideration in the amount of $105,000. This liability includes the 100% penalty assessment incurred as a responsible person for Papa Piroziki's, Ltd., which will be abated upon satisfaction of Papa Piroziki's payment per paragraph 5, Alex Lee Group, unassessed penalty for Lee Cuisine, assessed and unassessed income tax, and any other tax that has been proposed to be assessed. Mr. Matthews must comply with all filing and payment requirements. The offer-in-compromise is to be filed no later than February 25, 1994. It is the parties' understanding that the offer-in-compromise will take approximately six months to process, and agree that in order to afford Lee Matthews sufficient time to obtain the $105,000, his offer-in-compromise shall not be formally accepted for six months from the date it was submitted. The offer amount is to be paid within the statutory period of thirty (30) days of acceptance by the IRS ...

9. That Lee Matthews will cooperate with the IRS by completing an offer-in-compromise for his individual tax liability, providing the IRS with all necessary documents and records to support said offer-in-compromise, and responding to all IRS inquiries concerning the offer-in-compromise. Mr. Matthews understands that the IRS intends to place nominee liens against certain real property which he transferred to Barbara Alexander Matthews, and in which the IRS contends he still has an ownership interest. The IRS agrees not to take any further collection action against Lee Matthews, individually, during the period of time that his offer-of-compromise is under consideration, provided that Mr. Matthews takes no action to place his assets beyond the reach of the IRS, or to otherwise attempt to frustrate the IRS' efforts to collect this debt.

Counsel for both parties and the undersigned executed this document, which was entered into the record on April 15, 1994.

As noted, Barbara Matthews filed an unopposed motion for voluntary dismissal with prejudice pursuant to the consent order. Barmat moved for judgment for specific acts and for declaratory judgment which is presently before the court. In it, Barmat claims that although Lee Matthews paid, on its behalf, the amounts due under the consent order, the government provided an inadequate accounting, refuses to refund the portions of the payments that included penalties, and wrongfully levied against $158,999 in insurance proceeds from the fire.[2] Barmat also states it was informed that the IRS would probably reject Lee Matthews' offer-in-compromise. Barmat seeks a declaratory judgment applying principals of collateral estoppel or *res judicata*. Specifically, it requests an order requiring the government to abate all penalties associated with Barmat's employment taxes referred to in the consent order and stating that the IRS has no interest in Barmat's assets

> to the extent of a determination being made as to all employment and individual tax liabilities referred to in its Consent Order, specifically the taxes referred to in the Offer–in–Compromise for Lee Matthews' individual tax liability for $105,000 subject to the credit of $34,306.66 which is to be abated upon Papa Piroziki's tax liability pursuant to paragraphs numbered 7 and 5 for the Consent Order issue by this Court.

Barmat also seeks an order pursuant to Fed. R.Civ.P. 70 compelling the IRS to abate the penalties referred to in the consent order.

After twice seeking extensions of time to respond, the government simultaneously filed its response and a motion to vacate the consent order. In it, the government argues that (1) the court lacks jurisdiction because Plaintiff improperly served the summons on the U.S. Attorney (who failed to transfer the case to the tax division), rather than the Attorney General; and (2) the consent agreement is void and must be set aside because the Assistant U.S. Attorney ("AUSA") who

---

**2.** The other actions they claim breached the consent agreement occurred prior to its execution.

sought the entry of the consent order lacked the authority to settle the case. The government contends that only certain delegated individuals may compromise tax cases.

The government's response to Barmat's motion also states that, except for retaining the cash seized from Papa Piroziki's cash register, it has released all the property seized and the levies against the insurance proceeds in Lee and Barbara Matthews' names (although not those issued in the names of Barmat or Papa Piroziki's Ltd). In addition, it argues that estoppel may not be invoked against the United States when its agents act without authority, and the court may not determine the preclusive effect of its own order. It further states that nothing in the consent order required it to accept Lee Matthews' offer-in-compromise, and Barmat Inc.'s employment tax liabilities are satisfied, including the $5,000 in penalties it has not refunded.

Barmat responds that IRS representatives knew of the consent order because its counsel contacted IRS District Counsel Dean Morley about it and sent copies of a letter memorializing the settlement agreement to Eric Jorgensen, IRS District Counsel; Joan Cardoza, IRS Chief Field Branch Division; and Rhonda Pierce, Field Supervisor, IRS Collection Division. It also argues that Fed. R.Civ.P. 11 was violated when the AUSA represented that she had authority to settle by submitting the consent order to the court.

After receiving the government's motion, Barmat filed a motion for contempt and protection under Fed.R.Civ.P. 70, seeking to prevent the IRS from further collection activity against Lee Matthews, individually. Alternatively, it requests that the government be held in contempt for violating the consent order. It claims that by filing the motion to vacate, the government has shown it intends to breach those portions of the consent order setting Papa Piroziki's liability at $30,000 and permitting Lee Matthews a $34,306 credit against his individual tax liability. As relief, it seeks an order restraining the IRS from further collection activity against Lee Matthews or, alternatively, holding the IRS in contempt, and attorney fees.

In response, the government reiterates that nothing in the consent order requires it to accept Lee Matthews' offer-in-compromise and it has, in fact, rejected the offer. It argues that, because Lee Matthews is not a party to this action, Barmat lacks standing to litigate Lee Matthews' tax liabilities, and the Anti–Injunction Act deprives the court of jurisdiction to enjoin the collection of taxes.

The parties verbalized most of the foregoing arguments during the previously-mentioned hearing on Plaintiff's motion for contempt and protection under Rule 70. At the hearing, Plaintiff argued that the government sought to void the consent order only after the restaurant burned down. The government acknowledged that Barmat had satisfied its tax liability, but its penalties have not been abated. The government admitted that Papa Piroziki's tax liability has been satisfied and it had intended and agreed to abate the 100% penalty assessed against Lee Matthews, individually, totalling $34,306.66, upon the satisfaction of the liability. However, it argued that it is not bound by the promise to abate the penalty because the AUSA who joined in the consent order lacked proper authority to settle the case. The government also reported that it has rejected Lee Matthews' offer-in-compromise and has determined that he owed substantially more than the amount the offer contemplates.

 As a preliminary matter, the court will address the argument that it lacks personal jurisdiction over the government because Plaintiff failed to properly serve the United States. The defenses of insufficiency of process or insufficiency of service are waived by failing to assert them in a preanswer motion or the first responsive pleading, or by making a voluntary general appearance. Fed.R.Civ.P. 12(h)(1); *see Trustees of Cent. Laborers' Welfare Fund v. Lowery*, 924 F.2d 731, 732 (7th Cir.1991). Because the government voluntarily appeared, never raised the issue in a preanswer motion, and filed responsive pleadings, its jurisdictional argument is waived.

 As to Plaintiff's motion for judgment for specific acts and declaratory judgment, Fed.R.Civ.P. 70 states in pertinent part "[i]f

a judgment directs a party to ... perform any ... specific act and the party fails to comply within the time specified, the court may direct the act to be done ..." This rule is operative only after entry of judgment. *See DeBeers Consol. Mines v. United States,* 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945). Thus, insofar as Plaintiff seeks relief under Rule 70, its motion is denied.

■ At its most basic, Plaintiff's motion for declaratory judgment seeks enforcement of its interpretation of certain portions of the Consent Order, a request that directly conflicts with the government's positions in its motion to vacate. Although the wording of the consent order is inartful, it is clear the parties agreed that by paying $30,000, and approximately $15,000 in outstanding 941 employee taxes by a date certain, Lee Matthews would satisfy Barmat's tax liabilities. In return, the government agreed to abate any penalties against Barmat associated with the 941 taxes and to abate the 100% penalty assessed against Lee Matthews individually, totalling $34,306.66, plus additions. The court finds, with respect to these provisions of the consent order, that insofar as Lee Matthews has fulfilled his end of the bargain (and the court has been informed that he has), the government is bound by its promise to abate the penalties.

■ However, that portion of the consent order relating to Lee Matthews' individual tax liability is unenforceable. In the consent order, Lee Matthews submitted an "offer-in-compromise ... for consideration in the amount of $105,000." By its plain language, Lee Matthews agreed to pay that amount in return for filing an offer to settle his individual tax liabilities. Under the terms of the consent order, the government never promised to accept this offer, only to consider it. This is reflected in that part of the consent order which limits the IRS's collection activities "during the period of time that his [Lee Matthews'] offer-in-compromise is under consideration." Although the consent order contemplates a six month processing period prior to formal acceptance, its language, as a whole, does not manifest a clear intent to be bound to the "offer-in-compromise."

■ The court rejects the government's argument that it is not bound to the consent order because the AUSA lacked authority to settle the case. First, none of the authorities on which the government relies for the proposition that it is not bound to its contract speak to the present situation, where the parties sought the court's involvement in their settlement through a consent order. Second, the record shows that IRS representatives had notice of and actually participated in the settlement. Third, an argument seeking to renege under these circumstances, where, *inter alia,* the AUSA and the IRS's representatives implicitly represented that they had authority to settle the case and Barmat substantially performed and relied on the agreement, offends public policy.

■ The procedural posture of this case does not clearly lend itself to declaratory relief. *See* 28 U.S.C. § 2201. Generally, declaratory judgments are sought by petition or complaint, rather than by motion, by parties to a controversy. *See, e.g., Mission Insurance Co. v. Puritan Fashions, Corp.,* 706 F.2d 599, 602 (11th Cir.1983). The motion before the court seeks an adjudication of Lee Matthews' rights and his status as a "party" remains questionable.

Accordingly, Plaintiff's motions for judgment for specific acts and declaratory judgment [# 6] and for contempt and protection under Rule 70 [# 26] are DENIED. Defendants' motion to vacate [# 16] is GRANTED in part insofar as it relates to paragraphs 7 through 9 of the consent order and DENIED in part insofar as it relates to paragraphs 1 through 6 of the consent order.

SO ORDERED.