lowing the date of this Order without further notice or order from this Court.

In re HEALTH SCIENCE PRODUCTS, INC., Debtor.

HEALTH SCIENCE PRODUCTS, INC., Plaintiff,

v.

Jim TAYLOR and Anne Taylor, Defendants.

Bankruptcy No. 94–03938–BGC–11. Adv. No. 94–00295.

United States Bankruptcy Court, N.D. Alabama, Southern Division.

Oct. 26, 1995.

Robert Rubin and Tim Lupinacci, Birmingham, Alabama, for Plaintiff–Debtor.

Charles Cleveland, Birmingham, Alabama, for Defendants.

*Memorandum Opinion on the Debtor's Motion for Order Requiring the Taylors to Execute Deed*

BENJAMIN COHEN, Bankruptcy Judge.

On April 13, 1995 this Court entered an order and accompanying memorandum opin-

ion on a complaint to avoid preferential transfer filed by the debtor and on a counterclaim filed by the defendants. In the memorandum opinion the Court described the contractual relationship of the parties as that relationship concerned certain real estate.[1] The Court wrote:

The obligation of Mr. Taylor under the contract is to deliver good title to the property to HSP on December 10, 1998. The obligation of HSP is to make the payments described in the promissory note which it executed in favor of Mr. Taylor. The contract encompasses both executory and nonexecutory elements.

Until December 10, 1998, the contract is executory, and Mr. Taylor's obligation to transfer legal title on that date is dependent on HSP's obligation to make the payments due under the contract before that date. In fact, the contract contemplates that Mr. Taylor will pay the remaining bond indebtedness with funds paid by HSP under the promissory note and sales contract. Mr. Taylor cannot pass title to the property until he actually acquires title to the property, by exercising the option to purchase provided for in the BIDB lease after satisfaction of the bond indebtedness. Indeed, any transfer of his interest in the property prior to satisfaction of the bond indebtedness, without the consent of all bondholders, would constitute a breach of the lease agreement between BIDB and Mr. Taylor. Also, until the bond indebtedness is satisfied, Mr. Taylor remains obligated under the lease agreement, regardless of his arrangement with HSP, while HSP has no obligation to make payments under the lease agreement to BIDB.

The contract contemplates that Mr. Taylor will not satisfy the bond indebtedness and exercise the purchase option until December 10, 1998, unless HSP elects to prepay the purchase price owed to Mr. Taylor before that date. The benefits anticipated from the contract by Mr. Taylor were that he would eventually receive a profit from his investment and that in the meantime he would be relieved of the burden of making the monthly payments called for under his lease agreement with BIDB. The benefits anticipated from the contract by HSP were that it could pay for the property over time and that, until December 10, 1998, it would have no obligation to pay real estate taxes on the property. For those benefits to be realized, both parties have substantial and material obligations which remain to be performed. Mr. Taylor must deliver good title to HSP on December 10, 1998, and, in the meantime, make the monthly lease payments to BIDB. HSP must make the monthly payments due under its contract with Mr. Taylor so that Mr. Taylor can make the monthly lease payments to BIDB.

The contract contemplates that on December 10, 1998, Mr. Taylor will deliver a fee simple deed to HSP and that the portion of the purchase price then remaining unpaid will be secured by a purchase money mortgage on the property. HSP's obligation to make the payments due under the mortgage beyond that date is dependent on the transfer of legal title of the property from Mr. Taylor. As of that date, but not before, HSP will have the right to require specific performance of the contract on the part of Mr. Taylor. As of December 10, 1998, the contract will, therefore, be executory no longer, and will evolve into an ordinary mortgage relationship. Until that date, however, the contract is executory and must be treated in all respects as an executory contract under 11 U.S.C. § 365.

*Health Science Products, Inc., v. Taylor,* 183 B.R. 903, 935–936 (Bankr.N.D.Ala.1995) (footnotes omitted).

After that memorandum and its accompanying order were entered, the parties asked the Court for a clarification. The Court did so on May 23, 1995. The pertinent part of that clarification, *in the language supplied by, and agreed upon by, the parties,* was: *As of that date, or any earlier date that HSP exercises its right to refinance the remaining balance due as provided in the*

---

1. For purposes of this memorandum opinion and order, the Court adopts the findings of fact and conclusions of law as made in the previous orders and memoranda entered in this case.

*Contract, the Debtor will have the right to require specific performance of the contract on the part of Mr. Taylor.*

Order on Motion for Clarification at 2 (May 23, 1995) (emphasis added).[2]

No appeal was taken from either of the above orders. On August 21, 1995 the Court entered an order granting the debtor's request to assume the executory contract made subject to the adversary proceeding and setting the parameters the debtor must meet in order to assume the contract. That order was amended on September 21, 1995. Appeals have been taken from both orders. On October 6, 1995, the Court entered an order confirming the debtor's plan of reorganization. The basis of that plan is the purchase by the debtor from the defendants of the property subject to the executory contract and the resale of that property to a third party. This transaction is referred to as the "Bedford Acquisition." The property referred to is the debtor's manufacturing plant and related property located at 1100 11th Court West, Birmingham, Alabama, 35203 and is further described as lots 1 and 2, according to the amended map of Arkadelphia Industrial Park First Sector, recorded in map book 101, page 17, in the Probate Office of Jefferson County, Alabama. The funds derived from the resale will be used to fund the debtor's reorganization. The matter now before the Court directly relates to the parties' contractual relationship as described in the adversary proceeding and whether the

defendants should be required to perform pursuant to the above described contract.

■ The debtor, pursuant to Fed. R.Bankr.P. 7070, has asked the Court, because Mr. Taylor has indicated that he will not honor the contract, to enter a judgment requiring the defendants to perform under the contract and to require the defendants specifically to execute a deed to the debtor pursuant to the terms of the contract.[3] The defendants object to the motion and to the Court's jurisdiction of this matter contending that all matters relating to the sale of the property are on appeal, which appeals divest this Court of its subject matter jurisdiction.[4] The issue here is not the modification of an order on appeal but whether this Court has the authority to enter an order to give effect to its previously entered, not appealed, order finding that the defendants were required to specifically perform under their contract with the debtor. If the defendants are to be required to perform, this Court must find that the debtor has complied, or will comply, with its part of the contractual bargain, thus triggering the defendants requirement that they perform. To that purpose the Court finds that the debtor's plan of reorganization, as approved by this Court's confirmation order entered on October 16, 1995, provides that the debtor will comply with its part of the contractual bargain. As the debtor has met this requirement, the defendants must perform their obligations under the contract.[5]

---

2. The debtor's reorganization plan as confirmed by the Court on October 6, 1995 proposes the refinancing of the balance due under the contract through the sale of the property the debtor will receive from the defendants.

3. Fed.R.Bankr.P. 7070 makes Fed.R.Civ.P. 70 applicable in bankruptcy court adversary proceedings. The defendants contended in argument that there was no adversary proceeding pending and that Fed.R.Bankr.P. 7070 applies only in adversary proceedings. This Court disagrees. Fed.R.Bankr.P. 9014 allows a bankruptcy court to direct that one or more rules in the 7000 rules series applies in a contested matter. Even if the instant matter does not fall within adversary proceeding no. 94–00295, the pending matter certainly qualifies as a contested matter and as such the Court directs that Fed. R.Bankr.P. 7070 applies.

Because the defendants have not as yet refused to perform under the contract, there is some

question whether a prerequisite to the application of Fed.R.Civ.P. 70 is for a party to first fail to perform an act. Whether this is a requirement, at least one appeals court has held that if there is error by a bankruptcy court in imposing the rule in anticipation of a failure of a party to perform, that such error is harmless. *In the Matter of Texas Extrusion Corp.,* 844 F.2d 1142, 1153 (5th Cir.1988).

4. The defendants requested this Court and the United States District Court for the Northern District of Alabama to stay the matters on appeal but both courts denied those requests.

5. The parties agree that Mr. Taylor has indicated that he will not voluntarily perform under the executory contract. Mr. Taylor has not indicated whether he will perform in response to an order requiring him to do so.

### Debtor's Amended Motion for Order Requiring the Taylors to Execute Deed

If a party is required to perform a specific act and does not, Fed.R.Civ.P. 70 allows a court either to direct another to perform the act or in the case of a conveyance of land that is located in the court's district, to enter an order divesting the recalcitrant party of its interest in the land and vesting that interest in another. Rule 70 presupposes however that there is a judgment or order in effect requiring the party to perform a specific act.[6] In the instant case there is no such order; however given the debtor's compliance with the parties' contract, this Court finds that the defendants should be ordered to comply as well; consequently the Court will enter such an order.[7] That order should require the defendants to:

1. Take whatever action is necessary to secure a deed to the property from the Birmingham Industrial Development Board; and,

2. Execute a deed transferring title in the property to the debtor.

The Court will supplement such an order to provide for the contingency of the defendants' failure to perform as required by the order. Pursuant to Fed.R.Civ.P. 70, if the defendants fail to act pursuant to the order, effective immediately upon that failure, the Court finds that:

A. Those with the power and authority to do so, should be authorized to take whatever action is necessary to transfer title of the property to the defendants; and, that

B. Judgment should be entered divesting the defendants of title to the property and that the property should be conveyed to and title to the property vested in, the debtor.

For the above reasons, the Court finds that the debtor's *Motion for Order Requiring the Taylors to Execute Deed, or in the Alternative, for Entry of Judgment Divesting Title Pursuant to Bankruptcy Rule 7070* is due to be granted. A separate order consistent with this memorandum opinion will be entered.

---

6. There is support for the proposition that Fed.R.Civ.P. 70 "is operative only after entry of judgment." *Barmat, Inc. v. U.S.*, 159 F.R.D. 578 (N.D.Ga.1974).

7. Fed.R.Civ.P. 70 may, or may not be the procedural device for the debtor to accomplish its goal. "Rule 70 is designed 'to deal with parties who seek to thwart judgments by refusals to comply with orders to perform specific acts,' ... and is not an appropriate basis for relief in cases where ... the party seeking relief does not allege noncompliance with any order issued by the court." *U.S. v. One (1) Douglas A–26B Aircraft*, 662 F.2d 1372, 1374 (11th Cir.1981) (citing 12 C. Wright & A. Miller, Federal Practice & Procedure, Civil § 3021 (1973)). The debtor has on the other hand filed a motion which this Court considers as a contested matter, but if there is any question as to the proper procedure to resolve this matter, or question of this Court's authority to hear this matter, surely this case is one of those where this Court's sequestered 11 U.S.C. § 105 powers may be used.

The initial litigation between these parties involved the issue of whether their contract was an executory contract or a sales contract. This Court held in the defendants' favor that it was an executory contract. The second phase of litigation concerned the issue of the assumption of that contract. The Court held for the debtor and allowed the assumption of the contract. The third phase involved the confirmation of the debtor's reorganization plan and concerned the issue of whether the debtor could sell the property subject to the initial phase executory contract. For sometime it has been clear that the debtor would seek the defendants' cooperation in executing their contract. As this Court wrote in denying the defendants' request for a stay on appeal of the Court's August 21, 1995 and September 21, 1995 orders:

Factually the Taylors cannot be harmed by the Orders' allowance of the assumption of the executory contract. Either the Debtor's default will be cured within the time specified by the Court or the Taylors will be paid in full on the effective date of HSP's confirmation, or the Taylors will be free to exercise their options under the contract, all of which are at least equal to what the Taylors would have received if this bankruptcy case had not been filed. This Court's prior rulings in this case have placed the parties in the posture they would have been in if the case had never been filed. Nothing has been added. Nothing has been taken away.

Order Denying Motion for Stay Pending Appeal at 3 (October 6, 1995).

The time has come for this matter to be completed. If this Court must, albeit reluctantly, invoke its section 105 powers to assure a resolution, then those powers should be exercised.

*Order Granting Debtor's Motion for Order Requiring the Taylors to Execute Deed*

In conformity with the memorandum opinion entered contemporaneously herewith, it is **ORDERED, ADJUDGED AND DECREED** that:[1]

1. Judgment is entered for the debtor and against the defendants.

2. The property subject to this Order is the debtor's manufacturing plant and related property located at 1100 11th Court West, Birmingham, Alabama, 35203 and is further described as lots 1 and 2, according to the amended map of Arkadelphia Industrial Park First Sector, recorded in map book 101, page 17, in the Probate Office of Jefferson County, Alabama.

3. The Taylors will execute, acknowledge, prove and record all such documents necessary to secure title to the real estate described above as the property from the Birmingham Industrial Development Board including, but not limited to, consenting to the release of pay-off information by AmSouth and permitting AmSouth to take any and all other acts necessary to close the Bedford Acquisition, as that acquisition is described in the Memorandum Opinion and the confirmed plan of reorganization.

4. The Taylors shall appear at the closing of the Bedford Acquisition and execute, acknowledge, prove and record, in the manner provided by law, a good and sufficient deed of conveyance to the debtor of the said real estate described above as the property, thereby vesting the entire legal title thereof in the debtor, and to deliver said deed of conveyance so executed, acknowledged, proved, and recorded to the debtor.

5. In the event that the Taylors shall fail, neglect, or refuse to consent to AmSouth releasing the pay-off information and permitting AmSouth to take any and all other acts necessary to close the Bedford Acquisition, or that the Taylors fail, neglect, or refuse to make, execute, acknowledge, prove, record, or deliver all documents necessary to secure title to the real estate described above as the property from the Birmingham Industrial Development Board, this judgment shall stand and be a good, sufficient, and complete authorization to AmSouth to release any and all information, and take such actions as necessary, to close the Bedford Acquisition.

6. In the event that the Taylors shall fail, neglect, or refuse to make, execute, acknowledge, prove, record, and deliver to the Debtor such deed of conveyance at the closing of the Bedford Acquisition, this judgment shall stand and be a good, sufficient, and complete divesting of title of the property from the Taylors pursuant to Rule 70 of the Federal Rules of Civil Procedure as incorporated in Rule 7070 of the Federal Rules of Bankruptcy Procedure, and shall be a good sufficient and complete conveyance from the Taylors to the Debtor of all right, title, and estate of said Jim and Anne Taylor in and to said real estate hereinabove described as the property, and shall be taken and held as good, complete and perfect a deed of conveyance as would be the deed of conveyance hereinbefore specified.

---

1. The substance of this order is reproduced from a portion of a proposed order prepared by debtor's counsel. Debtor's counsel represents that the language so incorporated has been accepted by the title company associated with the property sale.