# COURT OF CHANCERY
## OF THE
## STATE OF DELAWARE

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

June 22, 2020

Theodore A. Kittila, Esquire
James G. McMillan, III, Esquire
Halloran Farkas & Kittila LLP
5803 Kennett Pike, Suite C
Wilmington, DE 19807

William E. Gamgort, Esquire
Curtis J. Crowther, Esquire
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801

RE: *Carlos Eduardo Lorefice Lynch, et al., v. R. Angel Gonzalez Gonzalez, et al.,*
Civil Action No. 2019-0356-MTZ

Dear Counsel,

I write regarding Plaintiffs' Emergency Application to Confirm Interpretation of a Status Quo Order, filed on May 18, 2020 (the "Application"),[1] as well as Defendants' request to amend the status quo order.[2] Because of this Court's limited jurisdiction, I decline to rule on the Application to the extent it asks me to authorize the proposed sale of Plaintiff Lynch's personal interest in a foreign subsidiary of a Delaware parent company, and deny Defendants' request to amend the governing status quo order to prohibit that sale.

---

[1] Docket Item ("D.I.") 224.

[2] *See* D.I. 227, 231.

## I.    Background

The present action concerns a managerial dispute over Grupo Belleville

Holdings, LLC ("Belleville"), a Delaware holding company that owns a number of

Argentine media assets.    Plaintiffs filed their complaint in May 2019, seeking a

declaratory judgment pursuant to 6 *Del. C.* § 18-110.[3]  They contend that Lynch

owns a 65% interest in Belleville.[4]  Defendants allege that Lynch holds this interest

for the benefit of Defendant Gonzalez.[5]  The merits of this intensely litigated case

are currently pending my post-trial resolution.

On June 5, 2019, I entered a status quo order regarding Belleville's operations

during the pendency of this litigation (the "SQO").[6]  Throughout this case, the parties

have disputed whether the SQO's terms should apply only to Belleville, or also to

---

[3] D.I. 1 [hereinafter "Compl."].   The Complaint seeks injunctive and declaratory relief arising from the allegedly fraudulent attempt of Defendants Gonzalez and Televideo Services, Inc. to strip Lynch of his ownership interest in Belleville.   Count I seeks declaratory relief pursuant to 6 *Del. C.* § 18-110.  Count II seeks declaratory relief pursuant to 10 *Del. C.* § 6501.   Count III seeks injunctive relief.   Count IV asserts a claim for conversion.   Defendants Gonzalez and Televideo also asserted Counterclaims against Lynch. *See* D.I. 39 at 34–57 [hereinafter "Countercl."].  Count I of the Counterclaim seeks declaratory relief pursuant to 6 *Del. C.* § 18-110.  Counts II and III seek declaratory relief pursuant to 10 *Del. C.* § 6501.  Count IV asserts a claim for conversion.  Count V asserts a claim for fraud in the inducement.  Finally, Count VI asserts a claim for fraudulent misrepresentation.

[4] *See, e.g.*, Compl. ¶ 3.

[5] *See, e.g.*, Countercl. ¶¶ 3–5.

[6] D.I. 33.

its operating affiliates and subsidiaries.[7]  When I entered the SQO, I declined to make such an extension:  I entered only those terms on which the parties agreed, which pertained only to Belleville.  As I have explained, the SQO is intended to "maintain the status quo concerning the operations and management of Belleville during the pendency of the above-captioned litigation."[8]  Its terms do not extend to Belleville's subsidiaries and affiliates.[9]

The Application requests verification that the SQO "does not prohibit [Lynch] from entering into a series of transactions intended to provide urgently needed financial support to non-party Telearte Sociedad Anónima, Empresa de Radio y Televisión ('Telearte'), an indirect partially owned subsidiary of [Belleville]."[10]  According to Lynch, such transactions involve the sale of his personal interest in

---

[7] *See* D.I. 31, 32, 34, 35.

[8] D.I. 33 at 1; *see also* D.I. 213 ¶ 2 (reiterating that the "SQO was purposefully targeted at Belleville's management, not the management and operation of its subsidiaries," and finding that the SQO did not reach the transaction previously at issue because Defendants "failed to establish that the [transaction] concerns Belleville such that it falls within the purview of the SQO").

[9] *See* D.I. 33.

[10] D.I. 224 ¶ 1 [hereinafter "Appl."].  The proposed order submitted with the Application seeks this specific relief, as well as confirmation that the SQO, as written, "is limited in application to transactions involving Belleville and does not apply to transactions that involve HFS or Telearte."  Appl., Proposed Order Confirming Plaintiffs' Interpretation of Status Quo Order ¶ 1.

HFS Media S.A. ("HFS"), another Belleville subsidiary (the "Proposed Sale").[11]

Belleville holds 90% of Inversora de Medios y Comunicaciones S.A. ("IMC");

Lynch holds 10%. In turn, IMC holds 92.99% of HFS; Lynch holds 7.01%. HFS in

turn holds 5% of Telearte; the rest of Telearte is held by Prime, another subsidiary

held by HFS and IMC.[12] Both HFS and Telearte are organized under the laws of

Argentina.[13] The parties briefed the Application, and Defendants requested that I

amend the SQO to prohibit the Proposed Sale.[14] The parties submitted supplemental

briefing on Defendants' request, along with the proposed language of any

amendment.[15]

Plaintiffs submit that Lynch is merely attempting to sell his personal interest

in HFS, a subsidiary, so on its face, the Proposed Sale would not violate the express

terms of the SQO because it does not involve the sale of any ownership interests of

Belleville.[16] Defendants argue that the Proposed Sale would adversely affect

Belleville's "carefully and deliberately crafted" corporate structure by injecting a

---

[11] Appl. ¶¶ 1–5, 8, 10, 12, 14, 18, 19.

[12] *Id.* ¶¶ 7–10.

[13] *See* Appl. Ex. C.

[14] *See* D.I. 227, 228.

[15] *See* D.I. 231, 234, 236.

[16] *See* Appl. ¶¶ 14–19, 21.

new, third-party owner and transforming Lynch into a creditor of Telearte,[17] and that alienating interests in Belleville's subsidiaries could "undercut" the Court's ultimate determination Belleville's ownership and control.[18]

Considering these concerns, Defendants proposed an amended SQO that, *inter alia*, extends its Belleville-centric prohibitions against selling assets, taking on any substantial debt, and selling or transferring membership interests to "any of its affiliates, subsidiaries and/or related companies in the United States or abroad."[19] It also includes a prohibition on pledging or encumbering membership interests in Belleville or its affiliates or subsidiaries.[20]

Opposing Defendants' proposed amendment, Plaintiffs raise concerns about the Court's jurisdiction over Lynch's alleged ownership interest in HFS.[21] Plaintiffs point to this Court's limited *in rem* jurisdiction in a Section 18-110 proceeding, contending this jurisdiction, and any status quo order thereunder, is limited to the

---

[17] D.I. 234 at 4.

[18] *Id.* at 5.

[19] *See* D.I. 234 Ex. B ¶ 3.

[20] *See id.* ¶ 4(c). Defendants' amendment provides an exception to these prohibited transactions where the parties can agree on their terms or where one party successfully petitions the Court. *Id.* ¶ 4.

[21] D.I. 236 at 1, 5–6.

property at interest in the dispute: Belleville and its management and control.[22]

Plaintiffs posit that the Court does not have jurisdiction to prevent Lynch from selling a personal interest in an Argentine company, which is not related to the *res* in this dispute (*i.e.*, Belleville's management and control) and in no way belongs to Belleville.[23] Consistent with their view of the SQO and this Court's jurisdiction, Plaintiffs also submitted a proposed amendment to the SQO that expressly prohibits the sale of *only* Belleville's interest in its direct or indirect subsidiaries both domestic and foreign.[24] It also includes language prohibiting the pledging or otherwise encumbering any membership interests in Belleville.[25]

In response to Plaintiffs' jurisdictional concerns, Defendants argue that HFS, as a Belleville subsidiary and asset, is part of the disputed *res*.[26] They also assert that the Court has the power to stop Lynch from potentially damaging Belleville's

---

[22] *See id.* at 1.

[23] *See id.* at 1, 5–6; D.I. 239 at 4–7.

[24] *See* D.I. 236 Ex. 1 ¶ 4(a) ("Without the written agreement of Lynch, Gonzalez, and Televideo, the Parties shall not, without the prior approval of this Court: a. Sell all or substantially all of the assets of Belleville or Belleville's interest in any of its direct or indirect affiliates, subsidiaries and/or related companies in the United States or abroad[.]").

[25] *See id.* ¶ 4(c) ("Without the written agreement of Lynch, Gonzalez, and Televideo, the Parties shall not, without the prior approval of this Court: . . . c. Sell or otherwise transfer, pledge or otherwise lien or encumber any of ~~the~~their membership interests in Belleville.").

[26] *See* D.I. 239 at 9:6–14 [hereinafter "Hearing Tr."].

corporate structure because he is a party to this dispute.[27] The parties addressed these issues at argument on June 4.[28] I took the matter under advisement.

## II. Analysis

The Application and Defendants' request to amend the SQO pose two discrete issues. First, I must determine whether the Proposed Sale concerns Belleville's operations and management such that it would violate the SQO. Second, if the SQO does not reach the Proposed Sale, I must determine whether an amendment to the SQO is warranted. For the following reasons, I conclude that the SQO does not reach the Proposed Sale and that Defendants' proposed amendment to the SQO is unwarranted, as it would exceed the bounds of this Court's limited jurisdiction.

### A. The Governing SQO Is Limited To Belleville's Management, Operations, And Direct Holdings: It Does Not Reach The Proposed Sale.

Plaintiffs are correct that, as written, the SQO is limited to Belleville's operations and does not reach Belleville's subsidiaries, including HFS and Telearte. A SQO is designed "to protect [the Court's] jurisdiction over . . . the property or

---

[27] *See id.* 9:15–23.

[28] D.I. 238, 239.

other matter that is the subject of the action."[29]  In Section 110 actions, status quo orders are intended to preserve the ownership and assets of the subject company while litigation over ownership or control is pending.[30]  This action concerns Lynch and Gonzalez's dispute over control of Belleville, and so the SQO is limited to Belleville's control and ownership, as well as its assets.

Defendants contend that this Court can prohibit the Proposed Sale because HFS is an asset of Belleville, albeit indirectly held.  While Belleville's indirect subsidiaries may be considered its "assets," the SQO properly addresses Belleville's direct holdings (like its 90% stake in IMC), but not the subsidiaries themselves and their ownership structures.  Defendants have not demonstrated that the Proposed Sale would dissipate any directly held Belleville asset that the SQO is intended to protect.  The Proposed Sale only implicates Lynch's assets and those of Belleville's subsidiaries—subsidiaries that were purposefully excluded from the SQO.

Further, Defendants have not demonstrated that the Proposed Sale will directly affect Belleville's management and control.  The Proposed Sale would only

---

[29] *R & R Capital LLC v. Merritt*, 2013 WL 1008593, at *8 (Del. Ch. Mar. 15, 2013) (quoting *E.I. Du Pont Nemours & Co. v. HEM Research, Inc.*, 576 A.2d 635, 639 (Del. Ch. 1989)).

[30] *See id.*; *Arbitrium (Cayman Is.) Handels AG v. Johnson*, 1994 WL 586828, at *3 (Del. Ch. Sept. 23, 1994) (stating that status quo orders "assure stability" and prevent "material, potentially irreversible changes in the firm or in its assets or business").

change the identity of the owner of approximately 7% of HFS, and Telearte's financing. If Lynch sells his interest in HFS, the disputed ownership percentages in Belleville remain unchanged. Adjudicating Belleville's management and control does not directly inform the propriety of the Proposed Sale,[31] and the Proposed Sale would have no effect on Belleville's management and control.[32] The SQO does not reach the Proposed Sale, as Defendants have not demonstrated that it threatens "material, potentially irreversible changes in [Belleville] or in its assets or business" that the SQO is intended to prevent.[33]

---

[31] Defendants argue the Proposed Sale falls within the scope of this action and the SQO because Lynch acquired his stake in HFS by the same means he obtained his alleged 65% interest in Belleville, which is the subject of this litigation. Defendants fear that the proposed sale would allow Lynch to "cash[] out" an interest that he does not own before the Court opines on the nature of that interest. D.I. 227 at 7. Defendants may be right, but as explained *infra*, that problem is not for this Court to resolve. Although the HFS sale may invoke similar control issues, those are manifest in Belleville's direct and indirect subsidiaries, as distinct from Belleville.

[32] Defendants argue that the Proposed Sale could affect Belleville's other owner, Gonzalez, by injecting a third party into HFS's ownership structure in Lynch's stead. This problem is confined to HFS's ownership and does not bear on Gonzalez's stake in Belleville. Defendants' concern that the new HFS owner would have interests adverse to Gonzalez does not inform my Belleville inquiry: Lynch and Gonzalez are clearly adverse as it is.

[33] *See Johnson*, 1994 WL 586828, at *3.

### B. Belleville's Foreign Operating Subsidiaries And Affiliates Are Beyond The Reach Of This Court's *In Rem* Jurisdiction.

For the SQO to reach the Proposed Sale, the SQO requires amendment to extend to Belleville's operating affiliates and subsidiaries. "Once the status quo order is in place, the party seeking modification bears the burden of showing why it should be modified."[34] In determining whether a modification or amendment to the status quo order is warranted, the Court exercises its discretion and "assess[es] whether the facts or circumstances justifying the initial restraint have changed."[35] At bottom, this Court's injunctive powers are limited to its jurisdictional reach, so the terms of a status quo order may not exceed jurisdictional boundaries.[36] Because jurisdiction is a threshold issue,[37] Defendants must demonstrate that such an amendment would not exceed this Court's jurisdiction.

---

[34] *R & R Capital LLC*, 2013 WL 1008593, at *8 (citing *Conn. Gen. Life Ins. Co. v. Pinkas*, 2010 WL 4925832, at *2 (Del. Ch. Nov. 18, 2010)).

[35] *Germaninvestments AG v. Allomet Corp.*, 2019 WL 2236844, at *10 (Del. Ch. May 23, 2019) (citing *United Bhd. of Carpenters Pension Plan v. Fellner*, 2014 WL 1813280, at *1 (Del. Ch. May 1, 2014)), *aff'd in part, rev'd in part, and remanded by* 225 A.3d 316 (Del. 2020); *see also R & R Capital LLC*, 2013 WL 1008593, at *9.

[36] *Cf. Coin Automatic Laundry Equip. Co. v. Apartment Cmtys. Corp.*, 1985 WL 22036, at *2 (Del. Ch. July 31, 1985) (suggesting that the Court's powers to preserve the status quo is limited by its jurisdiction).

[37] *See, e.g.*, *Gibralt Capital Corp. v. Smith*, 2001 WL 647837, at *5 (Del. Ch. May 9, 2001) (describing personal jurisdiction as a "threshold issue"); *see also Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.*, 2005 WL 578972, at *6 n.30 (Del. Ch. Mar. 3, 2005) ("This argument fails to address the threshold requirement that, regardless of the nature of the

A Section 18-110 proceeding is not an action *in personam*.[38] Rather, it is *in rem*: the Court has jurisdiction "to determine who validly holds office as a manager of a Delaware limited liability company."[39] "The defendants in such a proceeding appear before the Court not individually, but rather, as respondents being invited to litigate their claims to the *res* (here, the disputed corporate office) or forever be barred from doing so."[40] "The one exception is the corporation itself, which is the entity that embodies the *res*, and is [the] only party before the Court in its individual capacity."[41] In view of the limited *in rem* nature of a Section 110 claim, the property at issue includes the disputed corporate office, but excludes "potentially obstructive or extraneous issues."[42]

---

claim brought against them, the Court must have personal jurisdiction over the . . . Defendants to hear such claims.").

[38] *See Genger v. TR Inv'rs, LLC* , 26 A.3d 180, 199 (Del. 2011) (interpreting 8 *Del. C.* § 225, the corporate analog to 6 *Del. C.* § 18-110).

[39] *Feeley v. NHAOCG, LLC*, 2012 WL 966944, at *5 (Del. Ch. Mar. 20, 2012) (citing *Genger*, 26 A.3d at 199–200).

[40] *Id.* (internal quotation marks omitted) (quoting *Genger*, 26 A.3d at 199–200).

[41] *Genger*, 26 A.3d at 200 (internal quotation marks omitted).

[42] Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 9.09[b], at 9-201 to -02 (2018) ("Indeed, an action under Section 225 traditionally has been regarded as *in rem* in nature, the *res* being the corporate office. Potentially obstructive or extraneous issues are shunned in such actions to facilitate the Court's ability to provide efficacious, if provisional, relief that is binding not only on any appearing parties but, most significantly, upon the Delaware corporation, the only party

While a Section 18-110 proceeding is pending, this Court is empowered "to grant ancillary injunctive relief to protect its jurisdiction over (and the parties' entitlement to a meaningful adjudication of their rights in) the property or other matter that is the subject of the action."[43] This includes the power to impose a status quo order, and the decision to do so is within the trial court's discretion.[44]

> [I]t has become customary in § [18-110] actions to put into place, either by agreement of the parties or court order, a *status quo* arrangement that precludes the [managers] presently in control of the [company] from engaging in transactions outside the ordinary course of the [company]'s business until the control issue is resolved. That is done to ensure stability: so long as the identity of the lawful [managers] is legally uncertain, it is undesirable to permit the [managers] who are managing the firm *pendente lite* (but who later may be found not to be the lawful [managers]) to make material, potentially irreversible changes in the firm or in its assets or business.[45]

---

necessary for enforcement of the Court's narrow order." (citing *Genger*, 26 A.3d at 199–200)).

[43] *R & R Capital LLC*, 2013 WL 1008593, at *8 (quoting *HEM Research, Inc.*, 576 A.2d at 639).

[44] *Id.*

[45] *Johnson*, 1994 WL 586828, at *3 (emphasis in original) (citations omitted).

Beyond entering a status quo order, "[t]he *in rem* character of a Section [18-110] action 'imposes important limits on the scope of [a] court's remedial powers even as to claims bearing on whether a person lawfully holds corporate office.'"[46]

"A proceeding under Section 18-110(a) is summary in character, and its scope is limited to determining those issues that pertain to the validity of action to elect or remove a manager."[47] A Section 18-110 proceeding is "designed to focus with precision on the corporate interest in prompt resolution of grievances respecting claims to office."[48] "It has been said to be improper to employ this statutory proceeding as a vehicle for the determination of individual disputes that do not directly affect the specific claims referenced in the statute."[49] "In determining what claims are cognizable in a [Section 18-110] action, the most important question that must be answered is whether the claims, if meritorious, would help the court decide the proper composition of the [company's] board or management team."[50] "If not,

---

[46] *Genger*, 26 A.3d at 200 (alteration in original) (quoting *Agranoff v. Miller*, 1999 WL 219650, at *18 (Del. Ch. Apr. 12, 1999), *aff'd as modified*, 737 A.2d 530 (Del. 1999) (TABLE)).

[47] *Llamas v. Titus*, 2019 WL 2505374, at *15 (Del. Ch. June 18, 2019) (internal quotation marks omitted) (quoting *Genger*, 26 A.3d at 199).

[48] Wolfe & Pittenger, *supra* note 42, § 9.09[b], at 9-202.

[49] *Id.*

[50] *Agranoff*, 1999 WL 219650, at *17; *accord Genger*, 26 A.3d at 199.

then those claims 'are said to be "collateral" to the purpose of a [Section 18-110] action and must be raised in a [separate] plenary action.'"[51]

Accordingly, "granting *in personam* remedies is problematic in the context of a purely *in rem* proceeding such as that authorized by Section [18-110]."[52] In a Section 18-110 proceeding, the Court "cannot go further and actually rescind a transaction," "award money damages," or otherwise fashion a remedy that is binding on individuals or entities beyond the *res*, unless the Court has *in personam* jurisdiction that would allow it to fashion that type of ultimate relief and bind those individuals or entities.[53] If *in personam* jurisdiction is established, then the Court may "adjudicate the litigants' property interest[s]."[54]

---

[51] *Genger*, 26 A.3d at 199 (second alteration in original) (quoting *Agranoff*, 1999 WL 219650, at *17).

[52] Wolfe & Pittenger, *supra* note 42, § 9.09[c], at 9-211.

[53] *Genger*, 26 A.3d at 200 (quoting *Agranoff*, 1999 WL 219650, at *18). A party may "supplement the minimum service requirements imposed by Section [18-110] by also pursuing a means for securing *in personam* jurisdiction, such as Delaware's long-arm or director consent statute. Where this is accomplished, the inherent judicial reluctance to resolve issues beyond those directly necessary to the determination of valid title to office may be overcome." Wolfe & Pittenger, *supra* note 42, § 9.09[d], at 9-218 (footnotes omitted) (collecting cases).

[54] *Genger*, 26 A.3d at 201 ("Only in a plenary proceeding before a court that has *in personam* jurisdiction over the litigants may the court adjudicate the litigants' property interest[s] . . . .").

The Court has *in rem* jurisdiction over Belleville. Accordingly, the SQO is tailored to preserve the *res* before the Court: Belleville's management and control. This Court also has *in personam* jurisdiction over the parties with respect to Belleville's operations for the claims and counterclaims in this matter.[55] The SQO's prohibitions are consistent with *in personam* jurisdiction over Lynch and Gonzalez.[56] The issue, therefore, is whether the SQO may be amended to reach Belleville's foreign subsidiaries and affiliates, and specifically the Proposed Sale, in view of this Court's limited jurisdiction in this Section 18-110 proceeding.

At argument, Defendants conceded that I would not have jurisdiction to prohibit the Proposed Sale if the Section 18-110 proceeding were not before me.[57] Nonetheless, Defendants contend that this Court has jurisdiction over Belleville's subsidiaries because they are Belleville assets,[58] and jurisdiction to stop Lynch from potentially damaging Belleville's corporate structure because he is a party to this

[55] Defendant Lopez is the only exception, as I dismissed all claims against him for lack of personal jurisdiction. I did not dismiss Plaintiffs' Section 18-110 claim against him in view of this Court's *in rem* jurisdiction and corresponding power to determine whether he is, in fact, a member or manager of Belleville. *See* D.I. 237, 239.

[56] The personal jurisdiction over the parties—supposed members and managers of a Delaware LLC operating abroad—is specific and limited to claims involving Belleville; it is not general. *See* 6 *Del. C.* § 18-109.

[57] *See* Hearing Tr. 16:8–24.

[58] *See id.* 18:3–19:4.

dispute.[59]  Addressing these arguments, I consider (1) whether this Court has *in rem* jurisdiction over HFS, an indirect Belleville subsidiary, as part of the *res*, and (2) whether this Court would otherwise have the necessary *in personam* jurisdiction with respect to the Proposed Sale.[60]  This Court has neither.

### 1.  Belleville's Subsidiaries Are Not Part Of The *Res* Encompassed By This Court's *In Rem* Jurisdiction.

HFS' ownership is not part of the *res* before this Court under Section 18-110.  Defendants attempt to stretch the scope of the *res*, and my limited *in rem* jurisdiction over it, to encompass HFS and Belleville's other affiliates and subsidiaries.  In support, Defendants point out that Belleville is a holding company and its primary assets are its controlling stake in its operating subsidiaries.  Defendants argue that the Proposed Sale may alter the structure of the Belleville family, implicating and harming Belleville itself.  They claim that such a transaction could not be unwound and would irreparably damage Belleville and that the Proposed Sale would render the SQO meaningless.  Defendants argue that the Proposed Sale could affect other owners within the Belleville family by injecting a third party in place of Lynch, and

---

[59] *See id.* 9:15–23.

[60] I question whether Defendants have standing to challenge the Proposed Sale.  Plaintiffs do not contest Defendants' standing via the SQO.  I focus on the gating jurisdictional issue and do not further consider standing today.

that Gonzalez would be left to deal with that change if the Court ultimately finds in his favor. As with Lynch's disputed interest in Belleville, Defendants contend that Lynch does not, in fact, personally hold the HFS interest, but rather holds it for Gonzalez's benefit.

These positions fail. As an Argentine entity that could not be subject to a Section 18-110 proceeding, HFS as a *res* is not before this Court. Consistent with the limited scope of a Section 18-110 proceeding, the *res* is limited to Belleville's management and control. HFS is twice removed from Belleville, and Telearte is removed even further. Contrary to Defendants' argument that this Court has jurisdiction over HFS's ownership simply because it is an indirect asset of Belleville, our law recognizes that this relationship is insufficient without more.[61] Our principles of jurisdiction are not as transitive as Defendants suggest.

---

[61] *See IM2 Merchandising & Mfg., Inc. v. Tirex Corp.*, 2000 WL 1664168, at \*4 n.15 (Del. Ch. Nov. 2, 2000). In considering jurisdiction over a foreign entity related to a Delaware entity, Delaware has respected the corporate form. In *Sternberg v. O'Neil*, the Delaware Supreme Court recognized that "[j]urisdiction over a wholly owned Delaware subsidiary does not automatically establish jurisdiction over the parent corporation in *any* forum." 550 A.2d 1105, 1119–20 (Del. 1988) (emphasis in original) (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925)), *abrogated by Genuine Parts Co. v. Cepec*, 137 A.3d 123 (Del. 2016). Rather, "both the parent and the subsidiary corporation's contacts with the forum state must be assessed individually." *Id.* at 1120. In *IM2 Merchandising and Manufacturing, Inc. v. Tirex Corporation*, then-Vice Chancellor Strine "s[aw] no reason to discriminate against non-Delaware corporate 'children' in the application of these legal principles." 2000 WL 1664168, at \*4 n.15 (referring to the principle that "[t]he mere fact that a non-Delaware corporation owns a Delaware subsidiary is not sufficient in itself

Further, as explained, the Proposed Sale does not bear on Belleville's management and control. And adjudicating Belleville's ownership and control does not directly inform whether Lynch is able to sell his purported personal interest in HFS. At bottom, a favorable outcome for Gonzalez in this action would never have ousted Lynch from HFS or other junior members of the Belleville family.

Consequently, an ownership or management claim regarding HFS is ancillary to this action, and is not properly before this Court.[62] Extending the SQO to reach,

_____

to justify this State's exercise of personal jurisdiction over the non-Delaware parent"). "Where a corporate child's only relation to Delaware is that its parent is domiciled here, . . . the exercise of personal jurisdiction by this State over the corporate child is improper." *Id.* HFS is a corporation existing under the laws of Argentina and a direct subsidiary of IMC. Indeed, it is not even a direct asset of Belleville; it is indirectly owned through Belleville's subsidiary, IMC. Telearte, the supposed benefactor of Lynch's purported loan, is one step further removed as a subsidiary of HFS. It appears these entities were purposely designed to operate solely within Argentina. To date, the Court is unaware of a single contact that HFS has had with Delaware. "Thus, there is no Delaware act of [Belleville]'s that can be imputed to [HFS], other than [Belleville]'s Delaware identity itself." *Id.* at *4. This is not enough. *Id.* at 5 ("If the [Defendants]' stark theory was accepted, the courts of Delaware would have personal jurisdiction over the non-Delaware subsidiary of a Delaware parent corporation whenever such a subsidiary engages in joint conduct with its Delaware parent *outside of Delaware.*" (emphasis in original)). Although *IM2 Merchandising* discussed the role of the parent-subsidiary relationship in the context of *in personam* jurisdiction over the foreign entity, its logic is applicable here and undermines Defendants' position. And to the extent Defendants' request to amend the SQO would invoke the need for this Court to assess whether it has *in personam* jurisdiction over Belleville's foreign subsidiaries, their status as a child of a Delaware parent corporation is insufficient without more.

[62] This Court can resolve legal and equitable controversies within the limited scope of this Section 18-110 proceeding, which concerns only Belleville's management and control. Disputes over ownership of operating subsidiaries of Delaware holding companies may not exceed the scope of a Section 18-110 proceeding in all circumstances. My conclusion is

and ultimately prohibit, the Proposed Sale would require this Court to address a "potentially obstructive or extraneous issue[]"[63] and fashion the type of *in personam* remedy that is "problematic in the context of a purely *in rem* proceeding such as that authorized by Section [18-110]."[64]

More broadly, interim injunctive relief preserving the status quo during a Section 18-110 proceeding is cabined to this Court's jurisdiction. Jurisdictional principles related to corporate separateness and place of incorporation remain operative in the context of an SQO order, even one concerning a holding company. I am unable to extend the SQO's terms to Belleville's foreign operating affiliates and subsidiaries in order to prevent or authorize the Proposed Sale.

### 2. This Court Does Not Have *In Personam* Jurisdiction Over Lynch With Respect To The Proposed Sale.

Because HFS is not included in the *res* such that the Proposed Sale is subject to the Court's *in rem* jurisdiction, I next consider whether I have the *in personam* jurisdiction required to amend the SQO and fashion a remedy for the Proposed Sale. Defendants contend that this Court can prohibit Lynch from selling his interest in

---

limited to the facts presented here, where the proposed sale involves an individual's interest in an indirectly held operating subsidiary (not the subject company's), and where the operating subsidiary is not wholly owned by the subject company.

[63] Wolfe & Pittenger, *supra* note 42, § 9.09[b], at 9-201.

[64] *Id.* § 9.09[c], at 9-211.

HFS to an undisclosed third party based on its *in personam* jurisdiction over him as a party to this action.[65]

Here, there are two potential sources of personal jurisdiction over Lynch with respect to the Proposed Sale, both of which invoke consent principles: first, Lynch's consent to Delaware's personal jurisdiction by filing suit in the state, and second, the implied consent statute under the Delaware LLC Act, 6 *Del. C.* § 18-109, which Defendants identify as the jurisdictional basis for their Counterclaims in this action.[66]

Personal jurisdiction can be obtained by the consent of the party.[67] In some cases, "consent has been recognized as a basis for the exercise of general personal jurisdiction. In fact, a variety of legal arrangements have been taken to represent

---

[65] To the extent the arguments presented suggested that I address *in personam* jurisdiction over both Lynch and HFS, I conclude that an *in personam* analysis for HFS is unnecessary here because HFS is not a party to the Proposed Sale.

[66] *See* Countercl. ¶ 16.

[67] *See Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2737409, at *6 (Del. Ch. July 14, 2008) (recognizing consent as a basis for personal jurisdiction and analyzing filing in the state as a source of consent); *see also Foster Wheeler Energy Co. v. Metallgesellschaft AG*, 1993 WL 669447, at *1 (D. Del. Jan. 4, 1993) ("Because the defense of lack of personal jurisdiction is a personal right, it may be obviated by consent or otherwise waived." (quotation omitted)); *Hornberger Mgmt. Co. v. Haws & Tingle Gen. Contractors, Inc.*, 768 A.2d 983, 986–87 (Del. Super. 2000) ("[I]n order to subject a defendant to personal jurisdiction, the defendant must either have minimum contacts with the forum state or consent to jurisdiction.").

express or implied consent to the personal jurisdiction of the Court."[68]  But in others, the scope of the party's consent is so limited such that it only gives rise to specific jurisdiction.[69]

Filing suit in Delaware gives rise to specific jurisdiction over the filing party with respect to actions arising from the transaction underlying the suit.  "[A] court may assert personal jurisdiction over a party on the ground that the party consented to jurisdiction by submitting itself to a court's jurisdiction by instituting another, related suit."[70]  Even where there is "some significant overlap" between the transactions giving rise to the first and second suits, the Court will decline to extend its personal jurisdiction from the first transaction over the filing party to the second where underlying facts in each transaction differ.[71]  This is true even where the "action involves many of the same parties and similar, if not identical, contractual provisions," yet is "sufficiently different from and independent of the [first] transaction."[72]  In such instances, filing suit regarding one transaction does not

---

[68] *Sprint Nextel Corp.*, 2008 WL 2737409, at *6 (alteration omitted) (quoting *Sternberg*, 550 A.2d at 1109).

[69] *See id.* at *6–7.

[70] *Id.* at *6 (alteration in original) (quoting *Foster Wheeler Energy Co.*, 1993 WL 669447, at *1).

[71] *Id.* at *7.

[72] *Id.*

reflect the filing party's explicit or implicit consent to personal jurisdiction in Delaware for a second, similar, and even related, transaction.[73]

By filing this action, Lynch could have only consented to Delaware's specific personal jurisdiction with respect to Belleville's management and control, as well as the associated claims informing the Section 18-110 dispute.[74] The scope of his consent cannot reach the Proposed Sale, which is separate and distinct from the transactions that gave rise to the Section 18-110 proceeding. While HFS is a Belleville subsidiary, and while the character of Lynch's HFS ownership may be similar to his Belleville ownership underlying the Section 18-110 proceeding, the two transactions present separate factual circumstances and are independent of one another. Defendants do not dispute that in the absence of the Section 18-110 proceeding, this Court would not have had jurisdiction over Lynch with respect to the Proposed Sale. Lynch did not consent to jurisdiction over him regarding the Proposed Sale by filing this action.

---

[73] *See id.* at *6–7. In that case, the Court also analyzed the first and second transactions under Delaware's long-arm statute. Defendants do not specifically raise such an argument here, but I point out that under *Sprint*'s logic, any long-arm analysis would yield the same result. Due to the limits of my specific jurisdiction, I do not have jurisdiction over Lynch with respect to the Proposed Sale. *See id.* at *8–10.

[74] Here, Lynch filed the Section 18-110 claim on Belleville's behalf, as well as other claims that seek individual relief. I leave for another day the interesting question of whether filing only an *in rem* action would constitute consent for *in personam* jurisdiction.

"In the absence of consent, the determination of whether personal jurisdiction exists under Delaware law involves [a] two-step process . . . ."[75]  I ask first "whether a statute of this state authorizes the exercise of personal jurisdiction" and second "whether such an exercise of jurisdiction would comport with the due process requirement of the Fourteenth Amendment to the United States Constitution."[76] With regard to Belleville, Defendants have asserted this Court has personal jurisdiction over Lynch via the implied consent statute, Section 18-109, "because this is a suit involv[ing] a dispute over rightful control of a Delaware limited liability company."[77]  They contend that Lynch's implied consent as a purported Belleville manager reaches the Proposed Sale.

Section 18-109(a) confers specific jurisdiction over Lynch in "in all civil actions or proceedings brought in the State of Delaware involving or relating to the business of the limited liability company or a violation by the manager . . . of a duty to the limited liability company or any member of the limited liability company."[78] "The Court of Chancery has held that once jurisdiction is properly obtained over a

---

[75] *Id.* at *6.

[76] *Cornerstone Techs., LLC v. Conrad*, 2003 WL 1787959, at *8 (Del. Ch. Mar. 31, 2003).

[77] Countercl. ¶ 16.

[78] 6 *Del. C.* § 18-109(a).

non-resident director defendant pursuant to [an implied consent statute], such non-resident director is properly before the Court for any claims that are *sufficiently related to the cause of action* asserted against such directors in their capacity as directors."[79]

Lynch's implied consent to jurisdiction as a Belleville manager does not create *in personam* jurisdiction for claims and controversies beyond the bounds of the Belleville control contest. For the reasons I already explained, the Proposed Sale of Lynch's interest in HFS is not sufficiently related to the Belleville Section 18-110 proceeding to warrant the exercise of jurisdiction over Lynch. Furthermore, pursuant to Section 18-109, Lynch is before me in his capacity as Belleville's manager for actions taken with respect to that office. The Proposed Sale involves Lynch's personal stake in HFS, and Defendants have failed to demonstrate that it is in any way related to his Belleville managerial duties.

---

[79] *Infinity Inv'rs Ltd. v. Takefman*, 2000 WL 130622, at *6 (Del. Ch. Jan. 28, 2000) (emphasis in original) (interpreting Delaware's non-resident director implied consent statute, 10 *Del. C.* § 3114, in the context of a Section 225 proceeding), *opinion clarified*, 2000 WL 268302 (Del. Ch. Feb. 17, 2000).

Accordingly, I do not have personal jurisdiction over Lynch with respect to the Proposed Sale.[80]  While this Court does have personal jurisdiction over Lynch, it is only specific to the Belleville control issue and not to ownership or management claims regarding HFS.  I am unable to prevent Lynch—over whom this Court has *in personam* jurisdiction only with respect to Belleville's operations—from selling his personal interest in an Argentine Belleville subsidiary.

### III.   Conclusion

In view of this Court's limited jurisdiction, Defendants have failed to demonstrate good cause to amend the SQO to reach Belleville's affiliates and subsidiaries.  Their request is denied.  To that end, the Court also denies Plaintiffs' proposed amendments to the SQO.  The SQO entered on June 5 and reaffirmed on April 9 will continue to govern without modification.

Because I lack jurisdiction to authorize or opine on specifics of the Proposed Sale,  the Application is granted only to the extent Plaintiffs correctly read the SQO as being limited in application to transactions involving Belleville, and not applying

---

[80] To the extent Defendants are asking me to expand the scope of Lynch's consent to the wider boundaries of general jurisdiction, Defendants have not alleged, nor demonstrated, that Lynch's contacts with Delaware are sufficiently continuous.

to transactions that involve HFS, Telearte, or its other foreign operating subsidiaries

that are beyond the reach of my jurisdiction.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc:  All Counsel of Record, via *File & ServeXpress*